**Emmarae GRIBBLE, Plaintiff and Respondent,**

v.

**Michael GRIBBLE, Defendant and Appellant.**

**No. 15453.**

Supreme Court of Utah.

July 21, 1978.

Jonathan H. King, Salt Lake City, for defendant and appellant.

J. Douglas Kinateder, Salt Lake City, for plaintiff and respondent.

ELLETT, Chief Justice:

This case arises out of a divorce action filed by the respondent against the appellant. Respondent has a minor child, her offspring by a previous marriage, born about two months before his mother's marriage to the appellant. Although four children were born to the respondent and the appellant during the time they were together, all four died either at birth or in their infancy. Because of this and because the appellant, the child's stepfather, had never formally adopted him, respondent did not seek child support in her divorce complaint. Appellant counter-claims that he should be entitled to reasonable visitation rights with respondent's son. He claimed that he has treated the child as his own son, feels very close to him, and is concerned about his future welfare. Appellant further offered to pay fifty dollars a month into a trust account for the child's benefit until he reaches eighteen years of age. Appellant lived with the child from the time he was two months old until the respondent and the appellant separated, roughly four years later, and it is uncontested that the child has had no contact with his biological father.

Respondent objected to visitation rights being awarded to the appellant. The trial court held as a matter of law that the appellant (stepparent) was not entitled to a hearing on the issue of visitation. The sole issue raised on appeal, therefore, is whether the appellant stepfather is entitled to a hearing on the issue of visitation rights.

Utah Code Ann., Sec. 30–3–5 (1953), as amended, provides guidelines re-

garding custody and visitation in divorce actions:

> When a decree of divorce is made, the court may make such orders in relation to the children, property and parties, and the maintenance of the parties and children, as may be equitable. The court shall have continuing jurisdiction to make such subsequent changes or new orders with respect to the support and maintenance of the parties, the custody of the children and their support and maintenance, or the distribution of the property as shall be reasonable and necessary. *Visitation rights of parents, grandparents and other relatives shall take into consideration the welfare of the child.* [Emphasis added.]

The 1975 Legislature amended Sec. 30–3–5 to include the last sentence, thereby codifying traditional common law rules permitting an equitable investigation into whether it is in the welfare of the child that parents, grandparents, or other relatives be accorded visitation rights. In proceedings to determine custody and/or visitation, the welfare of a minor child is of paramount importance,[1] and divorce courts have broad equitable powers in safeguarding this interest.[2] The last sentence of Sec. 30–3–5 indicates the legislative intent to protect the relationships which affect the child whose parents are being divorced, and to be sensitive to the fact that relationships beyond those of parent-child may be important enough to protect vis-a-vis visitation. For the appellant to assert visitation rights, he must, therefore, stand in the relationship of parent, grandparent, or other relative to this child, keeping in mind the paramount concern of the child's welfare.

■ At common law, the stepparent and stepchild relationship conferred no rights and imposed no obligations.[3] In some states this rule has been statutorily amended to require stepparents to provide for their stepchildren so long as the relationship continues.[4] The Colorado Supreme Court in *In re Estate of Iacino,*[5] went so far as to conclude that the word "stepchild" in an inheritance tax statute included the *former* stepchildren of a marriage that ended in divorce prior to the stepparent's death.

■ Utah has no statutory provision obligating stepparent support, however; and if nothing more existed in the relationship between the appellant and respondent's child, the appellant would not have standing to assert his claims. However, it appears that the appellant may have assumed the status of one in loco parentis to the child which would put him in a different position. The term "in loco parentis" means in the place of a parent, and a "person in loco parentis" is one who has assumed the status and obligations of a parent without formal adoption.[6] Whether or not one assumes this status depends on whether that person *intends* to assume that obligation.[7]

■ "Where one stands in loco parentis to another, the rights and liabilities arising out of that relation are, as the words imply, exactly the same as between parent and child."[8] The Washington Supreme Court in *In re Hudson,*[9] discussed the rights of parental custody and control and classified

1. *Arends v. Arends,* 30 Utah 2d 328, 517 P.2d 1019 (1974); *Robinson v. Robinson,* 15 Utah 2d 293, 391 P.2d 434 (1964).

2. *Dehm v. Dehm,* Utah, 545 P.2d 525 (1976); *Mecham v. Mecham,* Utah, 544 P.2d 479 (1975).

3. *Estate of Smith v. Nicholson,* 49 Wash.2d 229, 299 P.2d 550 (1956).

4. *Estate of Griffen v. Haugland,* 86 Wash.2d 223, 543 P.2d 245 (1975); *State v. Gillaspie,* 8 Wash.App. 560, 507 P.2d 1223 (1973).

5. 542 P.2d 840 (Colo.1975).

6. *Workman v. Workman,* 498 P.2d 1384 (Okl. 1972); *Sturrup v. Mahan,* 261 Ind. 463, 305 N.E.2d 877 (1974).

7. *Fevig v. Fevig,* 90 N.M. 51, 559 P.2d 839 (1977). See also 59 Am.Jur.2d, Parent & Child, § 88.

8. *Sparks v. Hinckley,* 78 Utah 502, 5 P.2d 570 (1931); see also *In re Tanner,* Utah, 549 P.2d 703 (1976).

9. 13 Wash.2d 673, 126 P.2d 765 (1942).

parental rights and those of persons in loco parentis together as having apparent equivalent status:

> . . . *Parents or those standing in loco parentis to minor children* primarily have the constitutional right to the custody and control of such minor children and may give to those children such attention and training as in the judgment of such parents or guardians may seem best for the welfare of the child or children and for the good of society.[10] [Emphasis added.]

■ In the instant case, the appellant claims to have lived with his stepson since the child was two months old, treated him "as his own son," and feels concerned about his future. If these claims are true and if they indicate his desire to stand in the place of a parent, then appellant's relationship may entitle him to the same rights accorded to natural parents. Implicit in the due process clause of our state Constitution[11] is that persons be afforded a hearing to determine their rights under the law. If we are to find that the status of loco parentis confers the same rights upon a stepparent as those enjoyed by a natural parent, then *a fortiori,* the rights of the stepparent cannot be terminated without an opportunity to be heard on the matter.

■ The loco parentis status has been terminated, however, by divorce,[12] although termination by divorce has been determined only in the context of the person in loco parentis making the choice to terminate the status; and not, as here, in the context of the one in loco parentis wishing to continue the status against the wishes of the natural parent. The common law concerning termination of the loco parentis status is that only the surrogate parent or the child is able to terminate the status[13] at will, and the rights, duties, and obligations continue as long as they choose to continue the relationship.[14]

■ This is an unusual case. Respondent even admits that the appellant loves the child. There is a presumption that the best interest of a child is for it to be reared by its natural parent, although this presumption is one of fact and not of law and may be overcome by sufficient evidence;[15] and, as stated previously, the welfare of the child is controlling. Important also is that the appellant does not seek custody; he wishes only to exercise visitation privileges. Because Sec. 30–3–5 conceivably allows visitation where custodial rights would not exist,[16] this Court feels that there is greater flexibility in determining visitation than there is in determining custody.

A case in point is that of *Spells v. Spells,*[17] a Pennsylvania decision concerning the right of a stepfather to seek visitation rights with his ex-wife's children. The court there said:

> . . . It is our belief that a stepfather may not be denied the right to visit

---

10. Id., 126 P.2d at 775.

11. Utah Constitution, Art. I, Sec. 7.

12. *Franklin v. Franklin,* 75 Ariz. 151, 253 P.2d 337 (1953).

13. *Taylor v. Taylor,* 58 Wash.2d 510, 364 P.2d 444 (1961); *Chestnut v. Chestnut,* 247 S.C. 332, 147 S.E.2d 269 (1966).

14. See the discussion re stepparents as standing in loco parentis in 59 Am.Jur.2d, Parent and Child, Sec. 91.

15. *Walton v. Coffman,* 110 Utah 1, 169 P.2d 97 (1946); *Baldwin v. Nielson,* 110 Utah 172, 170 P.2d 179 (1946).

16. For example, two natural parents divorce, with custody of their child granted to the mother and visitation rights granted to the father. The mother then dies. Custody would go to the father absent evidence of his unfitness, incapacity, etc. as against the child's maternal grandparents. Even though the maternal grandparents would not have a custodial right as against the father, they would have visitation rights which they previously did not have, assuming the court found it in the child's best interest to give visitation rights to the grandparents.

17. 250 Pa.Super. 168, 378 A.2d 879 (1977).

his stepchildren merely because of his lack of a blood relationship to them. Clearly, a stepfather and his young stepchildren who live in a family environment may develop deep and lasting mutual bonds of affection. Courts must acknowledge the fact that a stepfather (or stepmother) may be the only parent that the child has truly known and loved during its minority. A stepparent may be as devoted and concerned about the welfare of a stepchild as a natural parent would be. *Rejection of visitation privileges cannot be grounded in the mere status as a stepparent.* [Emphasis added.]

\*　　\*　　\*　　\*　　\*　　\*

Case law is clear that 'the guiding star for the court in coming to a conclusion [in a child custody case] is the welfare of the child. To this the rights of parents and all other considerations are subordinate.' . . . Thus, it is clear that visitation rights of a parent not in custody must be carefully guarded. . . . Accordingly, when a stepparent is 'in loco parentis' with his stepchildren, courts must jealously guard his rights to visitation. . .

The Pennsylvania court remanded the case to the trial court in order to determine whether or not the stepfather actually stood in loco parentis to his stepchildren; and if so, to permit the stepfather to demonstrate that his interest in visitation should be protected.

We believe this is a sound view and one which we should adopt.

■ In view of the foregoing, it appears that the appellant may be in loco parentis to respondent's child and that only he or the child, and not the respondent, can terminate that relationship. If appellant is in loco parentis, he should be considered a parent for purposes of Sec. 30–3–5. It is consistent with both the statutory intent and with the requirements of due process that he, like a natural parent, grandparent, or any other relative, have a hearing to determine his rights to visitation.

The appellant made no offer to pay child support, and certainly he has no legal duty to do so. He did offer to set up a trust fund on behalf of the child and to make monthly contributions to that fund. It may be that if a stepfather standing in the status of loco parentis is given the opportunity to seek visitation rights as a right afforded a natural parent, that he should not be permitted to escape the duties and obligations of the loco parentis status as long as that relationship remains intact. A hearing could determine not only the right to visitation, but could determine whether that right should be conditioned on a requirement that the stepfather accept an obligation to assist in the support of the child. This is not only consistent with the concept of loco parentis but may well be necessary to the child's welfare. Loco parentis does not envision that a stepparent be permitted to enjoy the rights of a natural parent without also accepting the responsibilities that are incurred.

The case is reversed and remanded to the trial court for a hearing to determine whether the appellant stands in loco parentis to his stepchild and if so, whether it is in the child's best interest to grant the appellant a right of visitation; and, further, whether that right should be conditioned by appellant's agreement to pay a proper share for child support. No costs are awarded.

CROCKETT, MAUGHAN, WILKINS and HALL, JJ., concur.