656 P.2d 1268

**In the Matter of the Appeal in MARICOPA COUNTY JUVENILE ACTION NOS. JS–4118/JD–529.**

**No. 1 CA–JUV 173.**

Court of Appeals of Arizona, Division 1, Department B.

Dec. 7, 1982.

Review Denied Jan. 11, 1983.

Robert K. Corbin, Atty. Gen. by C. Eileen Bond, Asst. Atty. Gen., Phoenix, for appellee Dept. of Economic Sec.

Atmore Baggot, Phoenix, for appellant.

Franzula M. Bacher, Phoenix, for minor children.

## OPINION

GREER, Judge.

In this appeal from the trial court's November 13, 1981 order severing appellant's parental rights over her three daughters, appellant presents four arguments. First, the evidence was insufficient to support the trial court's findings in support of severance; second, the trial court erred in terminating appellant's parental rights without a showing of why dependency proceedings would be inadequate to protect the children; third, Arizona's termination statutes are unconstitutional because they fail to take into account, or to include as factors, the constitutionally protected rights of the stepfather and the family unit; and, fourth, the termination was void because Arizona's termination statutes have been rendered unconstitutional by the recent United States Supreme Court decision of *Santosky v. Kramer,* 450 U.S. 993, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).

On November 19, 1979, appellant's three daughters were removed from her home by a relative after it was learned the girls had been sexually molested by their stepfather. At that time the girls were 12, 6, and 4 years old. Three days later their great aunt took them to child protective services. They were eventually placed in foster homes where they remained until the time of the severance hearing. At the hearing the middle daughter, who was then eight years old, testified to various acts of sexual molestation upon her and her sisters by the stepfather, and to the fact that her mother was told of the acts but failed to do anything to protect her or her sisters. This testimony was corroborated by various social workers and psychologists who testified to similar acts described by the other daughters during interviews and psychological evaluations. Additionally, the psychologists testified that the stepfather was capable of committing acts of child molestation and that the mother's dependent personality was consistent with failure to protect the children. Finally, the pediatrician who examined the children in 1979 testified that the youngest daughter tested positively for oral gonorrhea and that the two older daughters were found to have marital introitus, a vaginal condition consistent with repeated intercourse or other intrusions by foreign objects.

At the conclusion of the severance proceedings the court found, by clear and convincing evidence, that the natural mother's knowing failure to protect her daughters from the sexual molestation by their stepfather constituted neglect and abuse justifying termination under A.R.S. § 8–533(B)(2). The court also found that the mother's failure to engage in a therapy program and failure to establish a home apart from the stepfather constituted abandonment within A.R.S. § 8–533(B)(1).

In appellant's first argument, she does not claim that the evidence is insufficient to support the court's finding of sexual molestation. Instead, she contends that because she and the stepfather have received psychological counseling since the children were removed, the evidence relied upon by the trial court was too stale to

support severance and that there was no showing that the mother would not now be able to properly care for the children.

While it is true that stale evidence may be insufficient to support severance, *Matter of Appeal in Pima County, Juvenile Action No. S–111,* 25 Ariz.App. 380, 543 P.2d 809 (1975), we need not reach the issue of whether, in this case, two year old acts of abuse may alone support severance.[1] Here, there was ample evidence that the acts were likely to recur and that the mother would be incapable of preventing them. The evidence reflected that the stepfather had not undergone therapy but had merely been psychologically evaluated and, as mentioned above, been found to be emotionally capable of committing further acts of child abuse. Despite this, the mother refuses to obtain a divorce. Moreover, the mother has a history of being unable to defend herself or her children from abuse. She remained married to her first husband for more than two years during which time she and her first daughter were physically abused. Her second husband, the father of the two younger girls, was a chronic drug abuser throughout the marriage and encouraged the oldest daughter to smoke marijuana on at least two occasions. The evidence also strongly suggested that the mother knew about the various acts of sexual abuse. Yet, she protected the stepfather to the point of testifying that on numerous occasions she had caught the girls in the acts of sexual conduct with neighborhood boys and relatives and that the girls had engaged in various forms of masturbation from the time they were eight to nine months of age.

The appropriate test of abandonment is "whether there has been conduct on the part of the parent which implies a conscious disregard of the obligations owed by a parent to the child, leading to the destruction of the parent-child relationship." *Matter of Juvenile Action No. S–624,* 126 Ariz. 488, 490, 616 P.2d 948, 950 (App.1980); *Anonymous,* 25 Ariz.App. 10, 540 P.2d 741 (1975). The above cited evidence, coupled with the testimony of the psychologist who examined the mother in May, 1981, and found her incapable of providing parental care, was sufficiently current to support the trial court's findings.

Appellant's second argument is that the trial court erred in terminating her parental rights without a showing of why dependency proceedings would be inadequate to protect the children. She claims the juvenile court judge never made a finding of dependency of two of the three girls. This is factually incorrect as reflected by the trial court's October 15, 1981 minute entry which specifically found the two younger daughters to be dependent. The older daughter had previously been adjudicated a dependent child. Insofar as appellant is arguing that the Department of Economic Security was required to make all reasonable efforts to preserve her relationship with her children, we agree that such a duty was owed. *See Arizona State Department of Economic Security v. Mahoney,* 24 Ariz.App. 534, 540 P.2d 153 (1975). However, the Department's responsibility has limits. There always comes a point where the trial court must decide whether the natural parent is making a good-faith effort to reunite the family. If not, the best interests of the child require termination. *Matter of Pima County, Severance Action No. S–110,* 27 Ariz.App. 553, 556 P.2d 1156 (1976), *Hernandez v. State ex rel. Arizona Department of Economic Security,* 23 Ariz. App. 32, 530 P.2d 389 (1975). Here, the

---

1. The acts of child molestation clearly constituted abuse within A.R.S. § 8–533(B)(1). The word is defined in A.R.S. § 8–201(2) as follows:

   'Abuse' means the infliction of physical injury, impairment of bodily function or disfigurement or the infliction of serious emotional damage as evidenced by severe anxiety, depression, withdrawal or untoward aggressive behavior and which emotional damage is diagnosed by a medical doctor or psychologist as provided in § 8–223 and shall include inflicting or allowing sexual abuse as provided in § 13–1404, sexual conduct with a minor as provided in § 13–1405, sexual assault as provided in § 13–1406, molestation of a child as provided in § 13–1410, sexual exploitation of a minor as provided in § 13–3552, commercial sexual exploitation of a minor as provided in § 13–3553 or incest as provided in § 13–3608.

children had been in foster homes for approximately two years when the trial court decided not only that there were grounds for severance, but that the facts demanded it. Although she had been attending therapy classes regularly from June, 1981 until October, 1981, her efforts to reunite the family were otherwise "token efforts." Furthermore, her testimony at trial was equivocal as to whether she would end her relationship with the stepfather if necessary to prevent further abuse. In short, we find sufficient evidence to support the trial court's implied finding that continuing the children in a dependency status was an inadequate remedy.

■ Next, appellant argues that Arizona's termination statutes are unconstitutional insofar as they fail to take into account or to include as factors the constitutionally protected rights of both the mother and stepfather to maintain their family unit. While natural parents have a fundamental liberty interest in the care, custody, and management of their children, *Santosky v. Kramer, supra,* appellant cites no authority, and we find none, extending a similar liberty interest to a stepfather or to the family unit created by a stepfather and the natural mother. Arizona's termination statutes deal with termination of the rights of natural parents or adopted parents. *See* A.R.S. § 8–531(10). A stepfather has no legal right to custody or control of a minor child nor even a right of visitation. To give such rights to stepfathers would invade the rights of natural parents and would further endanger the welfare of children by pitting rights of stepparents against those of the natural parents. A similar argument was made and rejected as to grandparents in *Cox v. Stayton,* 619 S.W.2d 617 (Ark.1981), and as to a former husband who was neither the child's legitimate father nor his adoptive father in *Hopper v. Brittain,* 612 S.W.2d 636 (Tex.Civ.App.1981). We do note that because the court is required to consider the best interests of the child, the stepfather's position will be adequately considered.

■ Finally, appellant argues that because *Santosky v. Kramer, supra,* holds that the grounds for termination of parental rights must be proven by clear and convincing evidence, Arizona's entire termination statute, which only requires a finding by a preponderance of the evidence, must be declared unconstitutional. However, as noted by appellee, when one portion of a statute is declared unconstitutional, it will be severed from the remaining portions when the sections are not so intertwined as to raise the presumption that the legislature would not have enacted one without the other. *Selective Life Insurance Company v. Equitable Life Assurance Society of United States,* 101 Ariz. 594, 422 P.2d 710 (1967). A.R.S. § 8–537(B), which contains Arizona's burden of proof, has previously, and singularly, been declared unconstitutional in light of *Santosky. See In the Matter of the Appeal in Pima County Juvenile Action No. S–919,* 132 Ariz. 377, 646 P.2d 262 (1982). As in *Santosky,* our supreme court expressed no hint that the entire termination statutes should fail merely because the standard of proof was inadequate. As noted in *Santosky,* issues of burden of proof have traditionally been for the judiciary and there is no indication in Arizona's statutory scheme that the legislature hinged its desire to permit termination upon the lower burden of proof of preponderance of the evidence. Thus, all other portions of the termination statute remain intact.

Accordingly, the court's order requiring severance is affirmed.

FROEB, P.J., and GRANT, J., concur.