David TINSLEY, Sr., Appellant (Respondent Below),

v.

Richard and Kathy PLUMMER, Appellees (Petitioners Below).

No. 49A02–8607–JV–265.

Court of Appeals of Indiana, Second District.

March 2, 1988.

James F. Beatty, Landman & Beatty, Indianapolis, for appellant.

Daniel J. Coffey, Indianapolis, for appellees.

SHIELDS, Presiding Judge.

David Tinsley, Sr. appeals the judgment of the trial court awarding Richard and Kathy Plummer visitation rights with his son, David Tinsley, Jr. and denying him attorney fees.

We reverse in part and affirm in part.

---

## ISSUE

The issues on appeal are:

1. Do the Plummers have a legally cognizable right to seek visitation with David;

2. If so, did the trial court abuse its discretion in awarding the Plummers visitation rights; and

3. Did the trial court err in denying Tinsley his attorney fees and costs?

## FACTS

David Tinsley, Jr. (David) was born to Lori Ann Hicks in September of 1979. David Tinsley, Sr., (Tinsley) was declared the father of David in an uncontested paternity action on February 12, 1980. On August 2, 1984, Lori Hicks died. A custody dispute ensued between Tinsley, and David's maternal relatives, Sherline Schwindler, Lori Hicks' mother, and Richard and Kathy Plummer, Lori Hicks' aunt and uncle. Upon request, Schwindler and the Plummers were granted leave to intervene in the original paternity action and, on August 9, 1984, petitioned the court for custody of David or, in the alternative, visitation. The Plummers were awarded temporary custody of David on September 17, 1984, pending the final hearing. On December 17, 1984, after trial, Tinsley was awarded custody of his son. A visitation order was not issued "because the parties indicated visitation could be resolved." Record at 115.

On February 2, 1985, Sherline Schwindler died and thereafter Tinsley did not allow David to visit with the Plummers. On May 8, 1985, the Plummers, together with another of Lori Hicks' aunts, Nancie Louise Hicks, petitioned for a hearing to set visitation. Tinsley responded with a Joint Motion to Dismiss and for Summary Judgment. The motion was subsequently denied as was Nancie Hicks' Motion to Intervene. After a hearing, the trial court granted the Plummers visitation for two weeks each summer in their Georgia home. In addition, the judgment provides "the family of Lori Ann Hicks shall be allowed to visit on a quarterly basis with David Tinsley, Jr. [on a week-end] as may be requested by [the Plummers]...." Record

at 121. The court ordered each party to pay their respective attorney fees and costs.

## DISCUSSION

Visitation rights for non-custodial parents have long been the subject of legislation. However, the courts, rather than the legislature, recognized rights of visitation in third parties. Thus, *Collins v. Gilbreath* (1980), Ind.App., 403 N.E.2d 921, held a step-father who had "acted in a custodial and parental capacity" had a cognizable right to seek visitation with his step-child. *Id.* at 924. In *Krieg v. Glassburn* (1981), Ind.App., 419 N.E.2d 1015, this court held grandparents, too, had a cognizable right to seek visitation with their grandchild.

Subsequently, the legislature addressed the visitation rights of grandparents by enacting I.C. 31–1–11.7–2 (Acts 1981, P.L. 265, Sec. 1), effective September 1, 1981. As originally enacted, the statute authorized a grandparent whose child was deceased or whose marriage had been dissolved to seek visitation with that child's offspring. In 1983, the statute was amended, allowing a grandparent to seek visitation only when the child's marriage was dissolved in Indiana or, if the marriage was dissolved in another state, only when the custody decree is not binding on the grandparents and Indiana has jurisdiction. Acts 1983, P.L. 285, Sec. 1. The next amendment occurred in 1985 and provided that the right of a grandparent to seek visitation survives adoption of the grandchild by a stepparent. Acts 1985, P.L. 281, Sec. 1. The amendment which occurred in 1987 provides that IC 31–1–11.7–2, as amended, applies to visitation rights granted to grandparents before September 1, 1985. Acts 1987, P.L. 293, Sec. 7.

Once the legislature enacted the grandparent's visitation statute, the courts enforced the statutory limitations. Thus, *In re J.O.* (1982), Ind.App., 441 N.E.2d 991, this court held the grandparent of a child not born of a marriage and whose parents are living, is not entitled to seek visitation

with the grandchild. Similarly, in *Matter of Meek* (1983), Ind.App., 443 N.E.2d 890, this court held a maternal grandmother was not entitled to court ordered visitation with her granddaughter because the grandchild's parents were alive and their marriage intact.

Legislative reaction to judicial decisions enforcing the statute was prompt. The 1985 amendment providing visitation rights survive adoption by a stepparent ensued following the decision in *In re Visitation of Menzie* (1984), Ind.App., 469 N.E.2d 1225, *appeal after remand* (1987) 505 N.E.2d 126. There, the court held adoption of the grandchild by a stepparent terminated grandparental visitation rights previously granted.

This history leads to Tinsley's argument. Relying on the principle of *expressio unius est exclusio alterius,* Tinsley asserts that because the Legislature has expressly granted visitation rights only to grandparents, and to non-custodial parents, it has, in effect, denied such rights to all others. The Plummers argue *Collins* and *Krieg* give parties who are not parents or grandparents the right to seek visitation when visitation is in the best interest of the child.

Both parties are partially correct. Tinsley correctly observes that our decisions hold the enactment of the grandparental visitation statute provides the only circumstances in which a grandparent may seek visitation rights with a grandchild. However, the conclusion we draw from the legislative action differs from that reached by Tinsley. We deem it significant that following *Collins,* which involved a stepparent, the legislature afforded grandparents visitation rights, under less stringent conditions than stepparents and without legislative limitation of the judicially-recognized visitation rights of other parties. From this act and omission we conclude the legislature tacitly approved *Collins* and left the development of the law on the rights of parties, other than parents and grandparents, to the sound discretion of the courts.

■ At the same time, the Plummers' interpretation of *Collins* is overly broad. *Collins* recognized a right to seek visitation in one who had "acted in a custodial and parental capacity." *Collins,* 403 N.E.2d at 924. Thus, contrary to the Plummers' argument, the "best interest of the child" is the standard by which the question of visitation is adjudged after the cognizable right is established; "the best interest of the child" does not determine the existence of the right. Thus, it is the party seeking visitation who bears the burden of establishing the threshold requisite of custodial and parental relationship.

■ The Plummers failed to meet this burden and accordingly, the trial court erred in granting them and, through them, other maternal relatives visitation rights with David. As a matter of law, the record is devoid of evidence which reasonably supports the conclusion the Plummers ever acted in a custodial or parental capacity toward David. Mrs. Plummer, David's great aunt, admitted that before Lori Hicks' death she had seen the minor child "mostly on family functions," and occasionally at other times. Record at 189. Her family, she said, "has seen him occasionally." *Id.* Mr. Plummer, David's great uncle, also testified the only time he had seen David prior to the temporary custody award was at family functions. Accordingly, the trial court found that "[b]efore September 17, 1984, Richard and Kathy Plummer had contact with David Tinsley, Jr., approximately five times per year, at family gatherings, from the time of his birth until the date they were awarded custody," (Record at 115) and that they had custody only from September 17, 1984 to December 17, 1984. This custodial period was the court ordered temporary custody pending the custody hearing. As such, it cannot form the basis of a cognizable right for the Plummers. Only the facts and circumstances as they existed prior to judicial intervention are relevant. In other words, the Plummers cannot use this court ordered temporary custody as a means of boot-strapping themselves into a position of asserting of right to visitation. The threshold requirement for an award of visitation was not met. A visitation award

without a cognizable right to visitation constitutes an abuse of discretion.

Tinsley further argues the trial court's denial of his request for attorney fees was an abuse of discretion. The general rule is that, in the absence of a contract or statute providing otherwise, attorney fees are not awardable. To the extent Tinsley attempts to bring this litigation with the "bad faith" exception he fails. Conduct within this exception must be "vexatious and oppressive in the extreme." *Cox v. Ubik* (1981), Ind.App., 424 N.E.2d 127, 129. As a matter of law, the record reveals this litigation was not baseless, frivolous or vexatious.

The judgment of the trial court awarding visitation is reversed; the judgment denying attorney fees is affirmed.

ROBERTSON and BUCHANAN, JJ., concur.