In re the Child CUSTODY Determination of Alison BANNING, A Minor.

Barbara Banning HUGHES, Appellant,

v.

Rosemary BANNING, Appellee.

No. 45A04–8808–CV–256.

Court of Appeals of Indiana, Fourth District.

April 5, 1989.

Richard F. James and Donald R. Capp of James, James & Manning P.C., Dyer, for appellant.

David E. Wickland, Munster, for appellee.

CHEZEM, Judge.

## Case Summary

Appellant, Barbara Banning Hughes, appeals the trial court's granting of Appellee's Petition for Visitation.

We affirm.

## Issues

Appellant raises two issues on appeal:

(1) Whether the principle of *res judicata* requires a party involved in a custody hearing to raise the issue of visitation rights (in the alternative) or be barred from subsequently filing a petition for visitation.

(2) Whether the trial court acted contrary to law by granting visitation rights to an unrelated third person.

## Facts

C. Michael Banning ("Father") and Barbara Banning Hughes ("Mother") were married on May 7, 1983. On May 14, 1984, Mother gave birth to Alison Banning ("Minor"). Father and Mother were separated on October 15, 1984 and divorced on May 4, 1985; Mother was granted custody. During the period that Mother had custody, Minor lived for six weeks with the maternal grandparents. On July 30, 1985, Father was granted custody.

Father and Rosemary Banning ("Stepmother") were married December 20, 1986. On February 23, 1988, Father was murdered. The following day, February 24, 1988, Stepmother filed a petition for deter-

mination of custody. The custody hearing was held February 20 and March 2, 1988. The court dismissed Stepmother's petition pursuant to Indiana Rules of Procedure, Trial Rule 41(B) finding that Stepmother failed her burden to prove Mother unfit. On March 21, 1988, Stepmother filed a Petition for Visitation. On April 27, 1988, the Superior Court held that Stepmother acted in a custodial and parental capacity with Minor and that it would be in the best interest of Minor to have visitation with Stepmother. Mother appeals this order.

### Discussion and Decision

#### Issue 1

■ The burden is on the appellant to present this court with a sufficient record from which we may make a judgment. Indiana Rules of Procedure, Appellate Rule 2(A).[1] Unfortunately, Appellant–Mother has failed to provide us with a complete record. Here, the record does not contain the transcript from the custody proceeding although it does indicate that all of the testimony from the custody proceeding was to be incorporated in the record. Without the complete record, we choose to rely on the trial court's judgment.[2]

#### Issue 2

Appellant asserts that the trial court acted contrary to law by granting visitation rights to a nonrelated [sic] third person pursuant to judge-made common law.

Although Indiana recognizes no statutory right to visitation for an unrelated third party, two cases in Indiana address under what circumstances it is proper to award visitation to an unrelated third person: *Collins v. Gilbreath* (1980), Ind.App., 403 N.E.2d 921 and *Tinsley v. Plummer* (1988), Ind.App., 519 N.E.2d 752.

■ To establish visitation, a third person must first show that a custodial and parental relationship exists and then, that visitation with the third person would be in the "best interest of the child." *Tinsley* at 754. It is the party seeking visitation rights who bears the burden of establishing the threshold requirement of a custodial and parental relationship. *Id.* The "best interest of the child" is the standard by which the question of visitation is adjudged after the cognizable right is established. *Id.* Here, Stepmother met her burden. Mother argues that Stepmother's daily contact with Minor was in a baby-sitting capacity. Minor resided with Stepmother and Father for a longer period of time than Minor resided with Mother. During this time, Stepmother was unemployed and cared solely for Minor while Father was working.[3] Clearly, as the daily, primary caretaker, Stepmother was more than a babysitter for Minor.

Mother argues that it would not be in the best interest of the Minor to allow visitation. This court has stated that "[t]he mere protest of a parent who asserts that visitation by another person would somehow harm his or her child should not be enough to deny visitation in all cases. This is especially true where the third person has cared for a child as his or her own."

1. There are numerous cases which hold that the burden is on the party seeking reversal of the judgment to present an adequate record. *Dunbar v. State* (1974), 160 Ind.App. 191, 311 N.E.2d 447; *Chustak v. Northern Ind. Pub. Serv. Co.* (1972), 259 Ind. 390, 288 N.E.2d 149; *Yuhasz v. Mohr* (1974), 159 Ind.App. 478, 307 N.E.2d 516; *Anthrop v. Tippecanoe School Corporation* (1973), 156 Ind.App. 167, 295 N.E.2d 637; *Stypczynski v. Kaiser Jeep Corp.* (1973), 156 Ind.App. 78, 294 N.E.2d 830.

2. However, we note that the Indiana Supreme Court, in *State ex rel. Jemiolo v. LaPorte Circuit Court* (1982), Ind., 442 N.E.2d 1060, 1062, stated that:

    Although visitation rights and custody rights are not synonymous I.C. 31–1–11.5–24, they are sufficiently interrelated, [sic] *In re Marriage of Ginsberg,* (1981) Ind.App., 425 N.E.2d 656, 659, that a petition to determine visitation rights filed after a determination of custody is in the nature of proceedings supplemental. *See State ex rel Greebel v. Endsley,* (1978) 269 Ind. 174, 175, 379 N.E.2d 440, 441. Thus, *Res judicata* would not appear to be applicable.

3. It is significant that the court in its ruling on Mother's motion to dismiss stated: "That relationship between Alison and her stepmother was approaching two years in duration and, indeed, the last two years of a four-year old child's life. And she acted, on the evidence, clearly, fully both in custodial and parental capacity, more so than the father."

*Collins* at 923. See also *LoPresti v. Lo-Presti* (1976), 51 A.D.2d 578, 378 N.Y.S.2d 487; *Spencer v. Spencer* (1977), Okl.App., 567 P.2d 112. Mother did not provide any evidence or testimony, other than her own, to show that it would be detrimental to allow visitation. On behalf of Stepmother, Dr. Robert Coyle, M.A., Ed.D., testified that it would not be in the best interests of Minor to completely sever contact with Stepmother.

The court, in the ruling on Mother's motion to dismiss and its decision, stated that there was clearly evidence of a close, loving relationship between Minor and Stepmother and that Stepmother represented a tangible symbol of Minor's Father. We will neither reweigh the evidence nor judge the credibility of witnesses. In considering the evidence in the light most favorable to the judgment, it is clear that the trial court did not abuse its discretion.

The trial court is affirmed.

RATLIFF, C.J., concurs in result.

MILLER, J., dissents with opinion.

MILLER, Judge, dissenting.

I dissent. Again we must address a variation of the classic solomonic dilemma—which mother gets the baby? Four year old Alison Banning is in the custody of her natural mother, Barbara Banning Hughes (an appropriate solomonic disposition). The record revealed that Alison's paternal grandmother, Mrs. Blink, not a party to this action, is also seeking visitation which—it is undisputed—she may be entitled to under Ind.Code 31–1–11.7–2. The majority, citing *Collins v. Gilbreath* (1980), Ind.App., 403 N.E.2d 921 (Judge Young dissenting), would also recognize a right of visitation in favor of Alison's stepmother, Rosemary Banning, because, for fourteen months, she acted in a parental and custodial capacity with Alison while married to the late Michael Banning, Alison's custodial parent and natural father. Our decision is more difficult than Solomon's. His choice was whether or not to slice the baby in half. Because Alison's grandmother is entitled by statute to visitation privileges, we

must decide not whether Alison is to be sliced into two pieces, but three.

In *Collins, supra,* the trial court awarded custody to the children's natural father. The stepfather, as the *only third party involved,* obtained visitation privileges against the wishes of the natural father. Judge Chipman and I affirmed a visitation order in favor of the stepfather because he had acted in a "custodial and parental capacity" with the children and visitation with the stepfather provided a "necessary transition to their new life with their natural father." *Id.* at 923, 924. We explicitly limited our holding stating "we do not intend to diminish the rights of a natural parent concerning his or her minor children. Nor do we intend to open the door and permit the granting of visitation rights to a myriad of unrelated third persons, *including grandparents,* who happen to feel affection for a child." *Id.* at 923, 924 (emphasis added). We noted "[a] number of jurisdictions have statutes permitting grandparents the right to request visitation [and] [i]f such a policy were to be adopted in Indiana we believe the adoption should occur in a legislative, not judicial, forum." *Id.* at 924 (footnote 1, citations omitted).

Our legislature has since created the right of grandparents to enjoy visitation with their grandchildren in the event their child dies or is divorced. Ind.Code 31–1–11.7–2. This statute created a right unknown at common law and therefore has been strictly construed. *In re Visitation of Menzie* (1984), Ind.App., 469 N.E.2d 1225 (*trans. denied*); *appeal after remand, Bailey v. Menzie* (1987), Ind.App., 505 N.E.2d 126. Statutes which provide new and extraordinary remedies are usually strictly construed, both as to the cases embraced within their terms and as to the methods to be pursued. Thus, one who claims a statutory right, or brings an action on a right created by statute, must bring himself/herself within the terms of the statute. 26 I.L.E. *Statutes* Sec. 177 (1960). *Marshall v. State* (1986), Ind.App., 493 N.E.2d 1317. "When what is expressed in a statute is creative, and not in a proceeding according to the course of the common

law, it is exclusive, and the power exists only to the extent plainly granted. Where a statute creates and regulates and prescribes the mode and names the parties granted right to invoke its provisions, that mode must be followed, and none other, and such parties only may act.... The maxim *'Expressum facit cessare tacitum'* is also of applicability here. This law designates the actors, and when a law designates the actors none others can come upon the stage." *Taylor v. Michigan Public Utilities Commission* (1922), 217 Mich. 400, 186 N.W. 485, 487.[1]

I disagree with our Second District's reasoning in *Tinsley v. Plummer* (1988), Ind. App., 519 N.E.2d 752, 56 U.S.L.W. 2571, to the extent it held the doctrine of *expressio unius est exclusio alterius* does not apply in the interpretation of Indiana's grandparents' visitation statute. The *Tinsley* court analyzed the statute against the backdrop of *Collins, supra.* In *Collins,* we did not contemplate the right to seek visitation to extend to grandparents. *Id.* 403 N.E.2d at 924. Subsequently, the legislature extended the right to grandparents under less stringent conditions than that set out as the "parental and custodial capacity" standard in *Collins.* While I do not criticize the logic of the *Tinsley* analysis, I nevertheless disagree that our legislature, by passing the grandparents' visitation statute, "tacitly approved *Collins.*" *Id.* 519 N.E.2d at 754.

Now, analyzing the stepparent visitation question against the backdrop of the grandparents' visitation statute, I agree with the often quoted dissenting opinion in *Simpson v. Simpson* (1979), Ky., 586 S.W.2d 33 because grandparents are now entitled to inject themselves into children's and custodial parents' lives. The *Simpson* dissent stated:

"The remark in the majority opinion that the 'visitation' statute does not prohibit the grant of nonparents who stand *in loco parentis* and are jurisdictionally capable of delegating custody is pure sophistry. The 'visitation' statute does not prohibit the grant of visitation to baby sitters, nannies, housekeepers, Sunday school teachers and various others who may have formed close emotional ties with a child. The majority opinion disregards the statute and opens the door to the butcher, the baker and the candlestick maker to a right to a hearing on 'visitation' rights." *Id.* at 36.

Also, because grandparents have now obtained the statutory right to invade the uninterrupted custody of the custodial parent, I find the rationale of *Matter of Maricopa County Juvenile Action Nos. JS–4118/JD–529* (App.1982), 134 Ariz. 407, 656 P.2d 1268 persuasive. In *Matter of Maricopa,* the court held "[w]hile natural parents have a fundamental liberty interest in the care, custody, and management of their children, appellant (stepfather) cites no authority, and we find none, extending a similar liberty interest to a stepfather or to the family unit created by a stepfather and the natural mother.... A stepfather has no legal right to custody or control of a minor child nor even a right of visitation. *To give such rights to stepfathers would invade the rights of natural parents and would further endanger the welfare of children by pitting rights of stepparents against those of the natural parents.*" *Id.* 134 Ariz. at 410, 656 P.2d at 1271 (citations omitted, emphasis added).

At this stage of the game, to interpret the grandparents' visitation statute as not excluding court created rights of visitation, would result in an absurdity for several reasons. First, it would permit two different courts to determine—upon the basis of

---

1. Rosemary Banning has pursued visitation by way of an *independent action*—the manner contemplated by the grandparents' visitation statute when one of the parents is deceased. I.C. 31–1–11.7–6. If Michael were still living, the grandparent would be required to bring the action in the divorce court. *Id.* The stepfather in *Collins, supra,* utilized a *habeas corpus* action. The maternal relatives that sought visitation in *Tinsley*

*v. Plummer* (1988), Ind.App., 519 N.E.2d 752, 56 U.S.L.W. 2571 intervened in the original paternity action that had established paternity in the child's natural father four years earlier. I believe the legislature has recognized the independent action as the exclusive vehicle for asserting visitation rights for non-related third parties when one parent is deceased and has limited its use exclusively to grandparents.

different evidence—reasonable visitation for the stepparent and the grandparents. In the case before us, no evidence was presented which permitted the court to consider the impending grandmother's visitation privileges and how they might affect or limit the stepparent's rights.

Secondly, the right of grandparents to visitation is obviously impaired, restricted, and may possibly be defeated by the fact a stepparent has already been awarded some, or perhaps, substantial visitation. A court might reasonably conclude that further intrusion into what was once the stable home of the natural parent would not be appropriate or in the best interests of the child. This situation obviously invites a "race to the courthouse" senario. The sooner one brings his or her visitation action, the more likely one is to obtain a piece of the child. Also, the sooner the action is brought, the larger is what is left of the child from which to take one's slice.

Thirdly, I do not believe the majority appreciates the significance of the grandparents' visitation statute in that, by its plain language, it permits not merely one intrusion by one grandparent, but possibly four intrusions by four grandparents. Pertinent parts of the statute read as follows:

Sec. 2(a) A child's maternal grandparent may seek visitation rights if:

(1) the child's mother is deceased; or

(2) the marriage of the child's parents has been dissolved in Indiana.

(b) A child's paternal grandparent may seek visitation rights if:

(1) the child's father is deceased; or

(2) the marriage of the child's parents is dissolved in Indiana. I.C. 31–1–11.7–2.

Where the child's parents are merely divorced, the statute permits both sets of grandparents, maternal and paternal, to seek visitation. Assuming the grandparents are married, two lawsuits could be brought. But, assuming the grandparents are not married, as many as four individuals could bring visitation actions.

Based on the above, I cannot believe the legislature, having established so many rights of grandparents to visitation, could have contemplated that any further intrusion into the custodial home should exist. Because the legislature has now defined a class and its remedy, I believe the courts must refrain from recognizing exceptions which expose children and the custodial parent to additional visitation orders.

Even if I believed Rosemary Banning was entitled to seek visitation with Alison, I would nevertheless dissent because I believe she has failed to overcome the presumption that Alison's best interests are served by the uninterrupted custody of her natural mother. There exists a presumption the creation of a stable, consistent home environment is in the best interest of the child. *Adams v. Purtlebaugh* (1951), 230 Ind. 269, 102 N.E.2d 499; *Matter of Paternity of Joe* (1985), Ind.App., 486 N.E.2d 1052. Natural and adoptive parents are aided with a statutory presumption that visitation is in the child's best interest. *Stewart v. Stewart* (1988), Ind. App., 521 N.E.2d 956 (*trans. denied*), 56 U.S.L.W. 2646. If third parties, unaided by a statutory presumption, are to be awarded visitation rights they must overcome the parent's *prima facie* right to uninterrupted custody with a proper showing that such visitation is in the child's best interest. The burden of proof upon the third party will increase as the amount of time sought and the type of visitation become more custodial. *Krieg v. Glassburn* (1981), Ind. App., 419 N.E.2d 1015.

Dr. Robert Burns Coyle, psychologist, testified in Rosemary's behalf at the visitation hearing. He had been hired by the late Michael Banning apparently for the purpose of testifying at a custody modification hearing. Before Michael's death, Coyle had examined Michael, Rosemary, and Alison. He never examined Alison's natural mother, Mrs. Hughes, nor did he examine Alison after her father's death. He only examined, analyzed, and testified about Alison's family life before Michael Banning's death.[2]

Moreover, Rosemary did not present any evidence concerning Alison's present home-

2. Dr. Coyle testified in behalf of Rosemary in her attempt to prove Barbara an unfit mother in

the custody battle after Michael Banning's

life or any projected impact of her proposed visitation order upon Barbara's and Alison's present homelife. She testified she had lived with Alison nearly two years during her relationship with Michael Banning, was unemployed at the time and therefore spent a great deal of time with Alison. She testified further that Alison was very special to her and that she had "affection for the little girl."

Barbara Banning Hughes, Alison's natural mother and custodial parent, testified Alison was very well adjusted during the six weeks since the custody determination in which she was awarded exclusive custody. She testified that she and her husband, Claude, do not get along with Rosemary. She testified further that Alison did not wish to see Rosemary and that visitation with Rosemary would be detrimental to Alison.

I do not doubt Alison and her stepmother share a common bond and mutual affection. I likewise do not doubt that Rosemary represents a "tangible symbol" of Michael Banning to Alison and that visitation would have some benefits. However, I believe Rosemary has failed to carry her burden of proving Alison's best interests are served by a visitation order because she has failed to present *any evidence* concerning Alison's present homelife and the impact of a visitation order thereupon. Because of the presumption favoring the uninterrupted custody in Alison's natural mother, such an evidentiary failure is fatal.[3]

Therefore, I would reverse the trial court's order granting visitation privileges to Rosemary Banning.[4]

death. The issue of Barbara's fitness as a mother, which is *res judicata,* is not before us.

3. Rosemary has also failed to present evidence concerning the impact of the grandmother's prospective visitation order or the impact of the competing visitation orders upon the custodial household. I might speculate that Michael's mother could also represent a "tangible symbol" of Michael to Alison which undoubtably would be one of the benefits to Alison of her grandmother's visitation privileges. I suggest, in the spirit of empathy, that if Rosemary has maintained an amicable relationship with Michael's mother, her mother in-law, she might visit with Alison during the grandmother's visitations with Alison. But, I find the situation in the case at bar, where courts inject court created rights of visitation into a custodial household which compete and possibly conflict with statutory rights of visitation, intolerable. I believe it is our duty, as the judiciary, to limit visitation intrusions into the custodial household by not recognizing rights additional to those expressly authorized by statute.

4. However, if visitation privileges are to be awarded under the circumstances in the present case, I believe a corresponding obligation of support should attach. In *Gribble v. Gribble* (1978), Utah, 583 P.2d 64, 1 A.L.R.4th 1263, the supreme court of Utah granted a stepfather a hearing to determine if he stood *in loco parentis* to his stepson intimating this status would entitle him to visitation privileges. The court noted if a stepfather standing in the status of *loco parentis* is given the opportunity to seek visitation rights as a right afforded a natural parent, he should not be permitted to escape the duties and obligations of the *loco parentis* status. The trial court on remand was to determine, if it found visitation was in the child's best interest, whether that privilege should be conditioned upon the stepfather's agreement to pay an appropriate share for child support.

I believe that *in loco parentis* status describes substantially the same relationship we defined in *Collins, supra*—one acting in a "custodial and parental capacity" with the child. I am impressed with the rationale in *Gribble* and believe that, if visitation privileges are to be predicated upon a "parental" relationship, they should be conditioned upon a corresponding obligation of support.