In re the Matter of R.D., S.D., and B.D.

**Michael H. WORRELL and Jacintha Worrell, Appellants–Petitioners,**

v.

**ELKHART COUNTY OFFICE OF FAMILY AND CHILDREN, Appellee–Respondent.**

**No. 20A04–9710–JV–458.**

Court of Appeals of Indiana.

March 19, 1998.

James L. McCaslin, Nancy A. McCaslin, McCaslin & McCaslin, Elkhart, for Appellants–Petitioners.

Beverly S. Peters, Elkhart, for Appellee–Respondent.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Michael and Jacintha Worrell appeal the dismissal of their petition for visitation with their former foster children.

We reverse and remand with instructions.

### ISSUE

Whether the trial court erred in dismissing the Worrells' petition.

### FACTS

In June 1994, brothers R.D., S.D., and B.D. were adjudicated to be Children in Need of Services. In 1995, the three boys were placed with foster parents Michael and Jacintha Worrell. Seventeen months later, the Worrells discovered that 12 year-old B.D. had kissed and held hands with their 12 year-old natural daughter. B.D. was removed from the Worrells' home and placed with another foster family. Two months later, R.D. and S.D. were also placed with B.D.'s foster family.

The Worrells subsequently filed a petition for visitation with the three boys. The trial court held a hearing wherein Jacintha testified that B.D. had been the Worrells' foster child for 17 months, and R.D. and S.D. had been their foster children for 19 months. When asked whether it had any questions for the witness, the Elkhart County Office of Family and Children moved to dismiss the Worrells' petition. The trial court heard argument on the motion and asked the CASA Representative Mary Raatz whether she "want[ed] to say anything." (R. 49). Raatz responded that she had spoken with the boys, and one of them wanted visitation with the Worrells.

The trial court took OFC's motion under advisement and stated as follows:

So what I will do is think about the motion to dismiss. If I decide not to dismiss it, I will set it for a further evidentiary hearing date so anything else that needs to be or wants to be presented can be presented, but I'll give it some thought before I make a quick decision on it.

(R. 54). Thereafter, the court issued an order wherein it found that the Worrells lacked standing to request visitation and dismissed their petition.

### DECISION [1]

The Worrells contend that the trial court erred in dismissing their petition without holding a hearing to determine whether visitation is in the former foster children's best interest. We agree.

Although Indiana recognizes no statutory right to visitation for an unrelated third party, several Indiana cases address the circumstances under which it is proper for the trial court to award visitation in such cases. *See e.g., Francis v. Francis,* 654 N.E.2d 4 (Ind. Ct.App.1995), *trans. denied; Caban v. Healey,* 634 N.E.2d 540 (Ind.Ct.App.1994), *reh'g denied, trans. denied; In Re Custody of Banning,* 541 N.E.2d 283 (Ind.Ct.App.1989);

---

1. We note that OFC's citation to persuasive authority from other jurisdictions is unnecessary in view of binding precedent in Indiana on the law of unrelated third party visitation. *See Wendt v. Kerkhof,* 594 N.E.2d 795, 797, n. 1 (Ind.Ct.App. 1992), *trans. denied.*

*Tinsley v. Plummer*, 519 N.E.2d 752 (Ind.Ct. App.1988); and *Collins v. Gilbreath*, 403 N.E.2d 921 (Ind.Ct.App.1980).

■ These cases are clear that the party seeking visitation bears the burden of establishing the threshold requisite of a custodial and parental relationship. *Francis*, at 7; *Caban*, at 543; *Banning*, at 284; *Tinsley*, at 754; *Collins*, at 924. Once the party seeking visitation meets this burden and establishes the requisite threshold, the party has established a legally cognizable right to seek visitation.[2] *Tinsley*, at 754. The trial court must then determine whether visitation is in the best interest of the child. *Caban*, at 543; *Banning*, at 284; *Tinsley*, at 754. The burden of proof again rests with the party seeking visitation. *Banning*, at 284.

■ Here, the Worrells met their initial burden of establishing the threshold requisite of a custodial and parental relationship with their former foster children and established a legally cognizable right to seek visitation. Therefore, the trial court erred in dismissing their petition without holding a hearing on whether visitation is in the former foster children's best interest.

The harsh result of denying standing to the Worrells based solely upon their status as former foster parents is unwarranted. The best interest of the child is paramount. The established standard which awards standing to unrelated third parties based upon the specific facts of each case rather than the status of the third parties is in the child's best interest.

Reversed and remanded with instructions for the trial court to hold a hearing on whether visitation is in the children's best interest.

STATON, J., concurs.

GARRARD, J., dissents with separate opinion.

GARRARD, Judge, dissenting.

Children determined to be Children in Need of Services (CHINS) are often placed in foster care. See, IC 31–34–20–1. The question presented by this appeal is whether someone who has served as such a foster parent thereby acquires standing to seek continuing visitation rights with such children after the period of foster care has ended. I am not persuaded that they should. I, therefore, dissent.

Initially, I acknowledge the belief that many foster parents become quite attached to their wards and may wish to maintain contact after the period of foster care. I also acknowledge that our decisions in this area have spoken of establishing simply "a custodial and parental relationship."

Nevertheless, I find the facts of those cases revealing. Apart from grandparent visitation issues, which are a distinct category now governed by statute, our decisions finding standing have uniformly involved a

---

2. The dissent notes that *Francis, Caban, Banning,* and *Collins* involved a stepparent with whom the child was living together with a natural parent until the death or divorce of the natural parent. However, a closer look at these cases reveals that they were not decided on the unrelated third party's status as a stepparent. Further, *Tinsley*'s denial of standing to a great aunt and uncle was not decided upon their status. Rather, the dispositive issue in all of these cases was whether the unrelated third party bore its burden of establishing the threshold requisite of a custodial and parental relationship. Specifically, these cases were decided on the facts of the case, not upon the status of the unrelated third party.

For example, in *Collins*, we affirmed the trial court's grant of visitation to a stepfather. In so doing, we stated as follows: "Our decision is explicitly limited to the type of factual situation presented by this case, i.e., where the party seeking visitation has acted in a custodial and paren-

tal relationship." *Collins*, at 924. In *Banning*, we affirmed the trial court's grant of visitation to a stepmother because she "met her burden" of establishing the threshold requirement of a custodial and parental relationship. *Banning*, at 284.

In *Caban*, we affirmed the trial court's award of visitation to a stepmother because the "evidence in [that] case clearly met the standard for the award of visitation...." *Caban*, at 543. In *Francis*, we affirmed the trial court's expansion of the stepfather's visitation rights because the stepfather demonstrated the "existence of a custodial and parental relationship...." *Francis*, at 7. Lastly, in *Tinsley*, we affirmed the trial court's denial of standing to a great aunt and uncle because as a "matter of law, the record [was] devoid of evidence which reasonably support[ed] the conclusion the Plummers ever acted in a custodial or parental capacity toward David." *Tinsley*, at 754.

stepparent with whom the child was living together with a natural parent until the death or divorce of the natural parent. *Francis v. Francis,* 654 N.E.2d 4 (Ind.Ct. App.1995) *trans. denied* (mother's husband believed he was father until blood test during dissolution established otherwise); *Caban v. Healey,* 634 N.E.2d 540 (Ind.Ct.App.1994) *trans. denied* (husband died leaving stepmother); *In re Custody of Banning,* 541 N.E.2d 283 (Ind.Ct.App.1989) (father died leaving stepmother); *Collins v. Gilbreath,* 403 N.E.2d 921 (Ind.Ct.App.1980) (mother died leaving stepfather). On the other hand, standing to seek visitation was denied to a great aunt and uncle, *Tinsley v. Plummer,* 519 N.E.2d 752 (Ind.Ct.App.1988), and to the boyfriend of the mother. *In re the Matter of E.M.,* 654 N.E.2d 890 (Ind.Ct.App.1995).

We frequently see or read of cases where a child has had a series of foster parents. We presume that at the outset of their service these good people are fully aware that the care and nurturing they furnish may be temporary in nature. Furthermore, many of the children involved may eventually be placed for adoption. Certainly there are instances where all the parties involved wish to maintain a relationship with someone who has served as a foster parent. The law does not prevent this. Yet when we reach the issue of standing to litigate the right to maintain a relationship, we may safely posit that such is not the case.

I also recognize that in the final analysis the court must still determine what is in the best interests of the child. Even so, I am not persuaded that the present custodians of a child (whatever their legal status to the child) should be subject to the turmoil and expense of defending such actions brought by those who have served as foster parents. I therefore dissent. I would affirm the trial court.