Michael WORRELL and Jacintha Worrell, Appellants (Petitioners Below),

v.

ELKHART COUNTY OFFICE OF FAMILY AND CHILDREN, Appellee (Respondent Below).

No. 20S04–9810–JV–598.

Supreme Court of Indiana.

Dec. 31, 1998.

James L. McCaslin, Nancy A. McCaslin, Elkhart, for Appellants.

Beverly S. Peters, Elkhart, for Appellee.

Peter A. Kenny, Bloomington, for Amicus Curiae Indiana Foster Care and Adoption Association, Inc.

SHEPARD, Chief Justice.

The sole issue in this case is whether Michael and Jacintha Worrell have standing to petition a trial court for visitation with their former foster children. We hold they do not.

### Factual Background and Procedural History

In 1995, R.D., S.D., and B.D., brothers sharing the same natural mother, were placed in the Worrells' home as foster children. They remained in that home for seventeen months, until the Worrells discovered that twelve-year-old B.D. kissed and held hands with their twelve-year-old natural daughter. Jacintha Worrell reported the incident to the proper authorities, and they placed B.D. in another foster home that same day. The other two brothers remained with the Worrells for two months, at which time they were placed elsewhere so that all three brothers could be reunited.

The Worrells subsequently filed petitions for visitation with each of the three boys. After a hearing, the trial court held that the Worrells lacked standing to request visitation and dismissed the petitions.

The Worrells appealed, and the Court of Appeals reversed. It held that the Worrells did have standing because they "met their initial burden of establishing the threshold requisite of a custodial and parental relationship with their former foster children...." *Worrell v. Elkhart County Office of Family and Children,* 692 N.E.2d 929, 931 (Ind.Ct. App.1998). It remanded this case to the trial court for a hearing on the merits. We grant transfer and affirm the trial court's dismissal of the petition.

■■■ The Court of Appeals has set out a two-part test for determining whether to grant visitation to a non-parent third party.[1] "To establish grounds for visitation, a third party must demonstrate the existence of a custodial and parental relationship and that visitation would be in the children's best interest." *Francis v. Francis,* 654 N.E.2d 4, 7 (Ind.Ct.App.1995). Under this regime, the first issue is standing and the second "is the standard by which the question of visitation is adjudged after the cognizable right is established...." *Tinsley v. Plummer,* 519 N.E.2d 752, 754 (Ind.Ct.App.1988). Before a court may proceed to the substance of a visitation request, the party seeking visitation must satisfy "the threshold requisite of [a] custodial and parental relationship." *Id.*

■■■ The Worrells argue that their foster relationship with the children constituted a custodial and parental relationship sufficient to confer standing to request visitation. While we agree that a foster parent acts by definition in a custodial capacity, we do not agree that the foster relationship justifies standing to petition for visitation.

---

1. The Indiana Code establishes an entirely separate statutory scheme for grandparents requesting visitation. See Ind.Code Ann. § 31–17–5–1 (West Supp.1998).

When the Court of Appeals established the two-prong test for third party visitation in *Collins v. Gilbreath,* it expressly limited the breadth of its application. 403 N.E.2d 921, 923–24 (Ind.Ct.App.1980) ("In so holding we do not intend ... to open the door and permit the granting of visitation rights to a myriad of unrelated third persons ... who happen to feel affection for a child. Our decision is explicitly limited to the type of factual situation presented by this case...."). That case involved a visitation request from a step-father who was married to the custodial natural mother of the children and who lived with the children prior to the death of the mother. *Id.* at 922. Accord, *In re Custody of Banning,* 541 N.E.2d 283 (Ind.Ct.App.1989) (upon death of child's natural father, court upheld custody of natural mother and visitation of step-mother who knew the child through visitation with child's natural father when he was alive).

Subsequent cases extended visitation to former step-parents following divorce. See, e.g., *Caban v. Healey,* 634 N.E.2d 540 (Ind. Ct.App.1994) (upon divorce of child's natural father and step-mother, court upheld custody of natural father and visitation of step-mother who raised child from infancy); cf. *Francis,* 654 N.E.2d 4 (upon divorce of children's natural mother and her ex-husband, court upheld custody of natural father and visitation of natural mother's ex-husband who raised children born during their marriage, and who did not discover that he was not the natural father until he and mother divorced).

In other cases, courts have declined to extend visitation rights to third parties who are not step-parents. See *Wolgamott v. Lanham,* 654 N.E.2d 890 (Ind.Ct.App.1995) (court denied visitation to ex-boyfriend of mother because he was an "unrelated stranger"); *Tinsley,* 519 N.E.2d at 752–55 (upon death of mother, court denied visitation to child's great-aunt and -uncle because the relatives saw the child only five times a year at family gatherings).

We agree with the prior holdings limiting standing to step-parents, and we now hold that the test does not extend to foster parents. As the Court of Appeals noted in the context of grandparent visitation, an expansion of the class of petitioners with standing to request visitation to include foster parents

"should occur in a legislative, not judicial, forum." *Collins,* 403 N.E.2d at 924 n. 1.

Unlike parent and step-patent relationships, foster relationships are designed to be temporary, providing a "safe, nurturing environment" until the child can either be returned to the natural parents or adopted by new ones. Indiana Foster Family Handbook 46 (1995). Furthermore, the foster relationship is contractual; the parents are reimbursed by the State for their care of the children. See *id.* at 101–05. Finally, as Judge Garrard noted in his dissent, the foster relationship may be one in a series of temporary arrangements. *Worrell,* 692 N.E.2d at 932 (Garrard, J., dissenting). In the midst of changing family relationships, constancy of contact and support is vital, but if each of the potential profusion of foster parents had standing because he or she had custody of the child at some point, the natural or adoptive parents might be forced to defend visitation claims against a legion of petitioners. *Id.* We hold, therefore, that foster parents do not have standing to petition for visitation with their former foster children.

### Conclusion

We vacate the decision of the Court of Appeals and affirm the decision of the trial court.

DICKSON, SULLIVAN, SELBY, and BOEHM, JJ., concur.