David O. DICKSON, Albertine M. Dent, Board of School Trustees and School City of Hammond, Indiana, Appellants–Defendants,

v.

Mary AARON, Appellee–Plaintiff.

No. 45A03–9507–CV–242.

Court of Appeals of Indiana.

June 12, 1996.

Transfer Denied Nov. 26, 1996.

James K. Whitaker and Paul A. Velligan, James K. Whitaker & Associates, Hammond, for appellants.

Hilbert L. Bradley, Gary, for appellee.

## OPINION

GARRARD, Judge.

Mary Aaron brought this civil rights action against the School City of Hammond, Indiana (School City), the Board of School Trustees (Board), David O. Dickson, the superintendent of the School City, and Albertine M. Dent, the Board President. The trial court entered judgment against the School City and the Board.

## FACTS

Aaron, a black female teacher, was employed for seventeen years with the School City as a permanent teacher and, at various times, an assistant boys and girls track and girls basketball coach at Gavit High School in Hammond, Indiana. On April 15, 1987, Aaron filed a complaint with the Equal Employment Opportunity Commission (EEOC) alleging gender discrimination in her failure to be named an assistant boys track coach. Aaron withdrew her complaint in February of 1988 after reaching a negotiated settlement with the School City.

Aaron served as assistant girls basketball coach during the 1989–1990 school year. During this time, Aaron had repeated dis-

putes with assistant principals Charles Hall and Rodney Ely in addition to several confrontations with students and parents. As a result of these various confrontations and complaints, Superintendent Dickson notified Aaron that the cancellation of her indefinite contract as a permanent teacher would be considered at the next School Board meeting. However, upon further review of the charges against Aaron, Dickson concluded that because her conduct was related to her coaching duties, cancellation of her teaching contract would not be warranted. Dickson did suspend Aaron from her coaching duties with the hope that she could eventually return to her extracurricular assignments.

Aaron filed a second petition with the EEOC in February of 1990 after her suspension from coaching duties, alleging retaliatory discharge as a result of her previous complaint filed in April of 1987. In September of 1990, the EEOC found that Aaron had failed to substantiate her allegations and dismissed the second complaint.

In October of 1990, the School Board modified Board Policy 4240 to announce its concern "about illicit drug and alcohol abuse as it affects job performance and employee reliability, student safety, the learning and work environment, and how it undermines confidence in the public school system." Since its modification, the last sentence of Board Policy 4240 has read: "Any employee who manufactures, distributes, possesses, uses or is found to be under the influence of alcohol or illicit drugs at the work site may be subject to disciplinary actions including termination of employment."

In November of 1990 Louis Martin, a white male teacher with the Hammond Public School System, was disciplined by Aletta M. Hicks, Clark Middle School Principal, for smelling of alcohol while at school. Martin was warned that a second incident of alcohol use during school hours would result in being sent home without pay and referral to the

School City Personnel Department. On May 28, 1992, Martin was again found to have the smell of alcohol on his breath. The next day, Superintendent Dickson suspended Martin for the remainder of the 1991–1992 school year without pay.

On May 15, 1992, Aaron conducted a field trip with special education students to Chicago, Illinois. During the trip home, Aaron stopped at a restaurant. While in the restaurant, with the students present, Aaron ordered a pitcher of beer and consumed at least a portion of the pitcher. Aaron then drove the van back to Hammond. When the parents of the children learned of the event, they reported their concerns to Eva Willis, the special education department chairperson, and she in turn reported the incident to the Gavit High School Principal, Charles Hall. When Aaron was asked about the incident, she denied all of the students' allegations.[1]

On July 1, 1992, Superintendent Dickson served Aaron with notice that consideration of the cancellation of her permanent teaching contract would take place at the Board's meeting on August 10, 1992. Aaron obtained counsel and requested a hearing. On July 21 and 22, 1992, the Board conducted a hearing to consider the cancellation of Aaron's contract. On August 4, Board President Dent requested Dickson's recommendation as to the cancellation of Aaron's contract. On August 10, Dickson recommended to the Board that Aaron's contract be canceled, and the Board approved this recommendation.

Aaron filed both a petition for judicial review of the Board's decision and an action under 42 U.S.C. § 1983 alleging a violation of her Fourteenth Amendment right to equal protection. A bench trial was held on the civil rights violation portion of the case and the court entered judgment in favor of Aaron, awarding her damages in the amount of $12,000.00 and attorney fees.

---

1. We observe that the court failed to actually make factual findings on these issues, instead stating that students "alleged" and "testified" that Aaron drank beer, and making a finding that some of these students had been earlier chastised by Aaron. The trial court should have made specific findings on this issue. However, at trial Aaron admitted during her opening statement that she had been drinking and would not be contesting the Board's finding on this issue. (Supp.R. at 41–42). We shall therefore treat the trial court's "qualified" statements as findings of fact on this issue.

## DISCUSSION

While the School City has raised six issues for our review, we consolidate these into one issue: whether the court's judgment is supported by the findings of fact and conclusions of law.[2]

Pursuant to Ind.Trial Rule 52, the School City requested the trial court to make specific findings of fact and conclusions of law. Upon review of a judgment in such a case, the court cannot affirm the judgment on any legal basis. *Summit Bank v. Quake,* 631 N.E.2d 13, 15 (Ind.Ct.App.1994). Rather, this court must determine whether the trial court's findings are sufficient to support the judgment. *Id.* We will not reverse the judgment unless the findings and conclusions drawn therefrom are clearly erroneous. A judgment is clearly erroneous when it is unsupported by the conclusions drawn, and the conclusions are clearly erroneous when they are unsupported by the findings of fact. *Metcalf v. Houk,* 644 N.E.2d 597, 599 (Ind. Ct.App.1994). Findings of fact are clearly erroneous when the record lacks any facts or reasonable inferences to support them. *Id.* We will consider only the evidence and all reasonable inferences which support the judgment. *Citizens Nat. Bank of Evansville v. Johnson,* 637 N.E.2d 191, 194 (Ind.Ct.App. 1994).

The court found that the Board's Policy 4240, while constitutional as written, was applied to Aaron in a manner which violated equal protection. The court also found that race, sex and retaliation for Aaron's previous EEOC complaints were impermissible factors resulting in the cancellation of the teaching contract. In an action brought under section 1983, the plaintiff must establish that 1) she held a constitutionally protected right; 2) that she was deprived of this right in violation of the Constitution; 3) the defendants intentionally caused this deprivation and 4) the defendants acted under color of state law. *Sims v. Mulcahy,* 902 F.2d 524, 538 (7th Cir.1990) (citations omitted), *cert. denied,* 498 U.S. 897, 111 S.Ct. 249, 112 L.Ed.2d 207 (1990).

Local governing bodies can be sued directly under section 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. *Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). Liability may not be vicariously imposed on governing bodies solely based upon the employer-employee relationship with the tortfeasor. *Id.* at 692, 98 S.Ct. at 1036. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under section 1983. *Id.* at 694, 98 S.Ct. at 2037–38.

The School City first argues that there are no findings that the Board terminated Aaron's teaching contract through a policy, practice or custom of the Board. It is true that " 'Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort.' " *Pembaur v. City of Cincinnati,* 475 U.S. 469, 477, 106 S.Ct. 1292, 1297, 89 L.Ed.2d 452 (1986), quoting *Monell,* 436 U.S. at 691, 98 S.Ct. at 2036. However, the court went on the state that "it is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Id.* at 480, 106 S.Ct. at 1298. Decisions by officials "whose acts or edicts may fairly be said to represent official policy" may give rise to municipal liability under section 1983. *Id.* at 480, 106 S.Ct. at 1299, quoting *Monell,* 436 U.S. at 694, 98 S.Ct. at 2037–38. The Board had the final authority to cancel Aaron's contract. This is the type of act which may be said to represent official policy, and it may thus serve as the basis for a section 1983 claim.

2. In her cross-appeal, Aaron alleges that the court erred in finding that Dickson was entitled to qualified immunity. As we conclude that the findings do not support a conclusion that there was an equal protection violation, we do not address Aaron's cross-appeal.

■ In order to establish a prima facie case of discrimination violative of the equal protection clause, a plaintiff must demonstrate that she was treated differently from other similarly situated employees. *Sims,* 902 F.2d at 538. Specifically, a plaintiff must show that "he or she is a member of a protected class, that he or she is otherwise similarly situated to members of the unprotected class, and that he or she was treated differently from members of the unprotected class." *Id.* (citations omitted). Moreover, a plaintiff alleging a violation of the equal protection clause must not only establish that she was treated differently, but she must also establish that the defendants acted with discriminatory intent. *Id.* at 539; *O'Connor v. Chicago Transit Authority,* 985 F.2d 1362, 1371 (7th Cir.1993).

In *Sims,* a parking monitor alleged that the municipality had discriminated based upon race in its enforcement of the tardiness policy. However, the Seventh Circuit concluded that the plaintiff had failed to demonstrate that she was treated differently from other similarly situated employees. While the plaintiff had been tardy fifteen times during a seven year period, a white employee who was not fired had been tardy nine times. The court, in examining the record of the plaintiff, concluded that her record for tardiness was not comparable to other employees. The court further found that there was no evidence revealing any discriminatory intent.

We find further guidance from *Vukadinovich v. Board of School Trustees of Michigan City Area Schools,* 978 F.2d 403 (7th Cir. 1992), *cert. denied,* 510 U.S. 844, 114 S.Ct. 133, 126 L.Ed.2d 97 (1993). In this case, a teacher was found guilty of driving while intoxicated and public intoxication and, in a separate case, found guilty of resisting law enforcement and operating a motor vehicle without a license. Before these convictions, the teacher had criticized the school board regarding its selection of the new superintendent. At a meeting with the new superintendent, the teacher was told that he would be making a mistake if he continued his public criticism. There was also evidence that other school employees had alcohol related problems or had been arrested by local police, but Vukadinovich was the only employee terminated. The Seventh Circuit, noting that the Equal Protection Clause only guarantees that "all persons similarly circumstanced shall be treated alike," concluded that Vukadinovich was not similarly situated with the other school employees, as there was no other employee who both had problems with alcohol and had been arrested:

> The most Vukadinovich alleges is that others, like himself, who had problems with alcohol or who had been arrested (under entirely different, unspecified circumstances), were not fired. Vukadinovich does not allege that the Board treated him any differently than anyone else who both had problems with alcohol *and* had been arrested.... This does not suffice for equal protection purposes.

*Id.* at 414; *cf. Ciechon v. City of Chicago,* 686 F.2d 511 (7th Cir.1982) (discharge of paramedic violated equal protection when fellow paramedic, who had equal responsibility for patient treatment on ambulance run out of which discharge arose, retained employment).

■ In the case before us, the court's findings reveal that a white male teacher, Martin, was given a warning by a Middle School Principal for smelling of alcohol at school. Martin was found to have the smell of alcohol on his breath a second time, and his conduct was reported to Superintendent Dickson. Dickson suspended Martin for the remainder of the school year without pay. While Martin's conduct did violate the School City's policy, no students actually saw him drinking, and there was no evidence that he was operating a motor vehicle while drinking. In contrast, Aaron ordered a pitcher of beer and drank in front of students during a field trip, and then proceeded to drive the students home after having consumed the beer. Aaron's conduct could possibly have resulted in a criminal conviction; Martin's conduct did not rise to this level. The trial court's findings refer to all three instances as "violations." However, the findings of fact demonstrate that the type of conduct was in fact different, and these findings do not support the conclusion that Martin and Aaron were similarly situated, or that Aaron was treated

differently than other similarly situated individuals in an unprotected class. We further note that the evidence regarding Martin's conduct and discipline was never presented to the Board; thus, it would be difficult to demonstrate that the Board intentionally treated Aaron differently.[3]

 With regard to the contention that Aaron was fired in retaliation for her filing of two complaints with the EEOC, we similarly determine that the findings do not support the conclusion that retaliation motivated the firing. To establish a prima facie case of retaliatory discharge, a plaintiff must show (1) that she engaged in a legally protected activity, (2) that the defendant subsequently took an adverse employment action against her, and (3) that the employment action was caused by the plaintiff's participation in the protected activity. *Lloyd v. Bridgeport Brass Corp.*, 811 F.Supp. 401, 407 (S.D.Ind.1993). Causation cannot be inferred simply from the presence of the other two elements; rather, it " 'must be proved in its own right.' " *Id.*, quoting *Hamann v. Gates Chevrolet, Inc.*, 910 F.2d 1417, 1420 (7th Cir.1990). Here, the findings indicate that Aaron did file two complaints, one in 1987 and one in 1990. Further, Aaron suffered an adverse employment decision in August of 1992. However, the findings fail to demonstrate any causal connection between these incidents. *See Lloyd*, 811 F.Supp. at 407 (filing of charge with Indiana Civil Rights Commission in July of 1987 too remote in time to firing in May of 1989 to show causal connection without additional evidence). The law is clear that there must be some evidence of causation. Without any findings showing that the School City was motivated by the desire to retaliate, any conclusion that Aaron was fired in retaliation is not sufficiently supported.

In a case such as this, we are compelled to reverse when the specific findings made by the trial court do not support the judgment. As the findings do not support the conclusions that Aaron was treated differently from

similarly situated employees, or that she was fired in retaliation for the filing of two complaints with the EEOC, we reverse.

Judgment reversed.

HOFFMAN and ROBERTSON, JJ., concur.

---

**3.** Additionally, in order to prove her claim, Aaron was required to prove that the School City acted with discriminatory intent. *Sims*, 902 F.2d at 539. The court made no findings on this issue; thus, the conclusions of law and judgment are not sufficiently supported on this issue as well.