In re the Matter of the PATERNITY
OF J.A.C.,

J.A.C., by Next Friend and Natural
Father, Dennis Colter, Appellant–
Petitioner,

v.

Judy A. Koenig, Appellee–Respondent.

No. 49A04–9912–JV–567

Court of Appeals of Indiana.

Aug. 16, 2000.

Publication Ordered Sept. 1, 2000.

**1058**

Irwin B. Levin, Laura S. Cohen, Cohen & Malad, P.C., Indianapolis, Indiana, Attorneys for Appellant.

M. Kent Newton, Todd A. Richardson, Lewis & Kappes, P.C., Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

BARNES, Judge

### Case Summary

Dennis Colter, the father of J.C., appeals an order granting visitation rights to J.C.'s maternal aunt, Judy Koenig. The sole issue for our review is whether the trial court erroneously ordered the visitation. We reverse.

### Facts

An overview of the facts is sufficient to resolve this matter. In the fall of 1994, Colter and Janetta Barkdull began a relationship. Shortly thereafter, Barkdull and her two children from her previous marriage moved in with Colter. In November of 1995, Barkdull was diagnosed with cancer. Despite a somewhat tumultuous relationship between Colter and Barkdull, Barkdull gave birth to their son, J.C., two years later. Barkdull and Colter signed an affidavit of paternity at the hospital, and the birth certificate identified Colter as J.C.'s father.

Approximately six weeks after the birth of J.C., Barkdull underwent a mastectomy and began chemotherapy treatments. Barkdull was told that she had approximately six months to live. Soon thereafter, Barkdull moved out of Colter's residence for the last time.

In September, Barkdull signed a Consent to the Appointment of Guardian which appointed her sister, Koenig, as guardian of J.C. because Koenig had been caring for Barkdull and J.C. On October 2, 1998, Koenig filed her Petition for Appointment of Guardian of the Person and attached Barkdull's consent to the Petition. The trial court granted the petition. Barkdull died a few days later.

On October 15, 1998, Colter filed a Petition to Establish Paternity and later moved to dismiss the guardianship. After a bench trial, the trial court issued an order awarding Colter custody of J.C. and granting visitation consisting of one weekend a month to Koenig.

### Analysis

The dispositive issue is whether the trial court erroneously ordered visitation between Koenig and J.C. because the findings of fact and conclusions of law are insufficient to support the visitation order. We conclude that the findings and conclusions are insufficient and reverse the order.[1]

---

1. Colter also raises the issues of whether the visitation was contrary to Indiana law and a violation of his constitutional right to family privacy. Colter contends that Indiana courts have never found standing to seek court-ordered visitation by a third party where the relationship in question was not one of step-parent and child. Indeed, several Indiana cases have addressed the issue of third-party visitation, and none of them have extended visitation to third-parties other than step-parents. *See, e.g., Worrell v. Elkhart County Office of Family & Children,* 704 N.E.2d 1027

At Koenig's request, the trial court issued findings of fact and conclusions of law pursuant to Indiana Trial Rule 52. As such, our standard of review is two-tiered. We first determine whether the evidence supports the findings, and then we consider whether the findings support the judgment. *Thompson v. Leeper Living Trust,* 698 N.E.2d 395, 397 (Ind.Ct. App.1998). The trial court's findings and judgment will not be set aside unless they are clearly erroneous. *Id.* A judgment is clearly erroneous when it is unsupported by the conclusions drawn, and conclusions are clearly erroneous when they are unsupported by findings of fact. *Dickson v. Aaron,* 667 N.E.2d 759, 762 (Ind.Ct.App. 1996), *trans. denied.*

In this case, the trial court entered an order including twenty-five findings and six conclusions. These findings and conclusions discuss the parties, their personal information, the history of Barkdull, the custody evaluations and opinions offered by professionals, the legal presumption of a natural parent regarding custody of a child, and the failure of Koenig to satisfy her burden of proof sufficiently to rebut that presumption. The findings and conclusions relate to the issue of custody and make no mention of any kind of visitation. In fact, the issue of visitation is not raised until the last portion of the order entitled "JUDGMENT," which contains three directives. In this section, the trial court awards custody to Colter, dissolves the guardianship, and provides that the Koenigs "shall have visitation of at least one weekend per month, unless otherwise agreed by the parties." Record p. 339.

Koenig reminds us of the general proposition that a trial court's findings and conclusions should be liberally construed on appeal to support the judgment. *See, e.g., Hydraulic Exchange and Repair, Inc. v. KM Specialty Pumps, Inc.,* 690 N.E.2d 782, 785 (Ind.Ct.App.1998). Koenig further asserts that "the trial court's conclusion and judgment that visitation should be granted to the Koenigs is subject to substantial deference on appeal, and Mr. Colter's view that this Court is at liberty to make a fresh determination with little or no regard to the trial court's decision is fundamentally misguided." Appellee's Brief p. 9. In addition, Koenig urges us to apply the principle of law espoused by our Supreme Court in *Mitchell v. Mitchell,* 695 N.E.2d 920, 923 (Ind.1998), namely that when a party has requested specific findings of fact and conclusions of law pursuant to Indiana Trial Rule 52(A), we may affirm the judgment on any legal theory supported by the findings. *See also Perkins v. Owens,* 721 N.E.2d 289, 291 (Ind. Ct.App.1999).

We fully appreciate the deference afforded to judgments on appeal and the particularly broad discretion entrusted to trial courts in family matters. We are also well aware of our ability to affirm a judgment based on any legal theory supported by the findings. However, Indiana law requires that courts apply a two-part test that has evolved from the holding in *Collins v. Gilbreath,* 403 N.E.2d 921 (Ind.Ct.

(Ind.1998); *Wolgamott v. Lanham,* 654 N.E.2d 890 (Ind.Ct.App.1995); *In re Custody of Banning,* 541 N.E.2d 283 (Ind.Ct.App. 1989); *Tinsley v. Plummer,* 519 N.E.2d 752 (Ind.Ct.App.1988); *Collins v. Gilbreath,* 403 N.E.2d 921 (Ind.Ct.App.1980). In support of his claim that the visitation order is an impermissible state intrusion upon his fundamental constitutional right to raise his child without interference, he cites the recent decision of the United States Supreme Court in *Troxel v. Granville,* —— U.S. ——, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). *Troxel* found unconstitutional as applied a state statute providing that any person may petition the court for visita-

tion at any time and that the court may order visitation rights when such visitation may serve the best interest of the child.

Koenig responds by arguing that visitation is permissible under the circumstances of this case even though she is not a step-parent because she satisfies the standard applied by Indiana courts in evaluating third-party visitation cases. Furthermore, she argues that the *Troxel* case is not controlling. Because we reverse the trial court's order as a result of the deficient findings and conclusions, we need not reach the propriety of visitation by a third-party other than a step-parent and the ramifications of *Troxel* in this particular case.

App.1980), in determining whether to grant visitation to a non-parent third party.[2] *See, e.g., Worrell v. Elkhart County Office of Family and Children,* 704 N.E.2d 1027, 1028 (Ind.1998); *Francis v. Francis,* 654 N.E.2d 4, 7 (Ind.Ct.App.1995). "To establish grounds for visitation, a third party must demonstrate the existence of a custodial and parental relationship and that visitation would be in the children's best interest." *Francis,* 654 N.E.2d at 7.

■ Nothing in its findings of fact and conclusions of law indicates to us that the trial court applied this two-part test in considering whether visitation with Koenig was appropriate. Although the court mentions in passing that Koenig had been caring for J.C., there is no discussion regarding whether the relationship between Koenig and the child was "custodial and parental" in nature as courts have defined those terms in third-party visitation cases. Without this determination, any order of visitation is improper because this type of relationship is required to confer standing upon a third party to seek visitation. *See Worrell,* 704 N.E.2d at 1028. Furthermore, although the trial court included findings concerning J.C.'s best interests for purposes of custody, none of the findings or conclusions address whether visitation was in his best interest. A best-interest analysis is the necessary second step in evaluating third-party visitation claims. *See id.*

As such, to the extent that the trial court ordered visitation based on the findings and conclusions, the judgment is not supported by them and is, therefore, clearly erroneous. *See Dickson,* 667 N.E.2d at 762. Because satisfaction of the two-part test is the only means by which a third party may obtain visitation rights with a child against the parent's wishes, there is no other theory upon which we can affirm the judgment as we might otherwise be permitted to do pursuant to *Mitchell.* De-

spite the fact that we are reluctant to interfere with the trial court's decision in this type of case, we are compelled to do so.

### Conclusion

The portion of the judgment ordering visitation between Koenig and J.C. is clearly erroneous because it is not supported by the findings and conclusions. Therefore, we reverse the judgment to the extent that it grants visitation rights to Koenig.

Reversed.

SHARPNACK, C.J., concurs.

ROBB, J., concurs in result with opinion.

ROBB, Judge, concurring in result.

I respectfully concur in result. However, I write separately to clarify a few issues I believe must be addressed.

I believe that the instant case presents a factual situation wherein Colter had followed the mandates of Indiana Code section 16–37–2–2.1 and had established his paternity prior to any of the proceedings to determine paternity which occurred at the juvenile court. Further, because Koenig is not a step-parent, *Worrell* is instructive: under no circumstances would Koenig have been entitled to visitation.

Pursuant to Indiana Code section 16–37–2–2.1, when a child is born out of wedlock and a paternity affidavit is executed, the paternity affidavit "establishes paternity ... and gives rise to parental rights and responsibilities...." Colter's paternity over J.C. was established with the affidavit which was filed two days after J.C.'s birth on November 18, 1997. Thus, it was completely unnecessary for Colter to have to prove his paternity over J.C. at a later date and the juvenile court's finding that "no steps were taken regarding officially determining paternity until October 2, 1998" was erroneous.[3] Because Colter is

---

2. The Indiana Code establishes a separate statutory scheme for grandparent visitation. *See* Ind.Code § 31–17–5–1.

3. Additionally, both Colter and Koenig stipulate to the fact that Colter is J.C.'s biological father.

J.C.'s father, J.C. should have been immediately turned over to Colter when Barkdull died. As such, the previous decision of the probate court to appoint Koenig temporary guardian was also in error.

However, regardless of the errors which occurred throughout this dispute, the fact still remains: even if Koenig was temporarily J.C.'s guardian, she is not entitled to visitation. *Worrell* is clear in its mandate that third-party visitation is only extended to step-parents. Koenig is not a step-parent and therefore is not eligible for third-party visitation.[4]

Thus, although I agree with the majority opinion that the findings of fact and conclusions of law are not sufficient, I think it is necessary to emphasize that because Colter had already been determined to be J.C.'s father, regardless of what occurred after Barkdull died, Koenig was not entitled to visitation.[5] Therefore, I respectfully concur in result.

### ORDER

This Court having heretofore handed down its opinion in this appeal on August 16, 2000, marked Memorandum Decision, Not for Publication; and,

Comes now the Appellant, by counsel, and files herein Motion to Publish, alleging therein that the Memorandum Decision clarifies various points of law and provides useful guidance on legal and factual issues of unique interest and substantial public importance and prays this Court to Publish its Memorandum Decision, which said Motion is in the following words and figures, to-wit:

(H. I.)

And the Court, having examined said Motion and being duly advised, now finds that the same should be granted.

IT IS THEREFORE ORDERED as follows:

1. This Court's opinion in this case heretofore handed down on August 16, 2000, marked Memorandum Decision, Not of Publication, is now ordered published.

---

[4] We note that although Colter testified that he believed J.C. should stay in contact with Koenig, and that he did not want to deny Koenig visitation, his testimony in no way bound him from appealing the erroneous decision of granting Koenig visitation.

[5] As with the majority, I express no opinion as to the application of *Troxel* because if resolution can be reached on some other basis, we do not look to the constitutional question.