## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
May 06 2016, 8:05 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Donald E. Hamilton
Fortville, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
David E. Corey
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of B.W. (Child) and J.W. (Father);

J.W. (Father),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

May 6, 2016

Court of Appeals Case No.
30A01-1510-JT-1652

Appeal from the Hancock Superior Court

The Honorable Terry K. Snow, Judge

Trial Court Cause No.
30D01-1503-JT-51

**May, Judge.**

J.W. (Father) appeals the termination of his parental rights to his daughter B.W. (Child). As there was ample evidence to support the termination, we affirm.

## Facts[1] and Procedural History

Child was born in May 2012. The Department of Child Services (DCS) became involved with the family about three months later[2] when it investigated a report Child had bruises and scratches on her face. Father and Child's mother did not provide a reasonable explanation for the scratches and bruises. Child was removed from the home and placed with her maternal grandparents. In December 2012, Child was adjudicated a Child in Need of Services (CHINS), but in the same adjudication Child was ordered to be re-introduced into the parents' home.

Child was removed from the home again a week later. A skeletal survey revealed Child had suffered three fractures in her legs and possibly two more in her arms. The injuries occurred when Child was in the parents' care and a

---

[1] Father does not appear to challenge any of the trial court's findings of fact. Therefore, they stand as proven. *See Madlem v. Arko*, 592 N.E.2d 686, 687 (Ind. 1992) ("Because Madlem does not challenge the findings of the trial court, they must be accepted as correct."); *McMaster v. McMaster*, 681 N.E.2d 744, 747 (Ind. Ct. App. 1997) (when father did not challenge specific findings, court accepted them as true).

[2] In July 2012, before DCS was involved, police responded to a domestic violence report at the family residence. Father pled guilty to domestic battery. His probation related to that conviction was revoked after Father violated the terms.

doctor testified they were non-accidental, inflicted injuries. Child was again placed with her grandparents. Father and Mother were charged with two counts of battery and two counts of neglect of a dependent. Both entered guilty pleas to one count of neglect of a dependent and were placed in Community Corrections.

[4] In January 2013, DCS was granted wardship. Child was never returned to the parents. In January 2014, DCS petitioned for termination of both parents' parental rights, and in September 2014, the trial court denied the petition. It did not enter findings of fact or conclusions of law; its Order stated only that DCS had not proven by clear and convincing evidence that there was a reasonable probability that the conditions that resulted in Child's removal would not be remedied or that there was a reasonable probability that continuing the parent-child relationship would pose a threat to Child's well-being.

[5] In February 2014, Father was moved from work release to home detention. The more visitation Father had with Child, "the more inconsistent Father was in his attention to the Child." (App. at 11.) In February 2015, Father tested positive for alcohol and was placed back on work release, where he is continuing to serve his sentence for neglect of a dependent. His earliest expected release date is June 2016.

[6] In March 2015, DCS again petitioned for termination of parental rights. The trial court took judicial notice of the 2014 hearings. In September 2015, it terminated the parental rights of both parents. In its order, the trial court noted

that throughout the CHINS case, Father was unable to demonstrate he could "consistently and appropriately parent and provide for Child on a full-time basis," despite the services DCS offered. (*Id.* at 12.) It noted evidence that adoption was in Child's best interests, based in part on the injuries to Child while in Father and Mother's care, the parents' history of domestic violence, Father's violations while in Community Corrections, and "Father's lack of recognizing safety concerns for the Child." (*Id.*)

## Discussion and Decision

Father's allegation of error appears premised on the fact that the trial court granted DCS's petition to terminate Father's parental rights in 2015 after denying a termination petition in 2014. He argues there was not enough of a change in circumstances between the two decisions[3] to permit the grant of the second petition. Father offers no explanation or citation to authority to support his apparent premise that a showing of such changed circumstances is required,

---

[3] Father also appears to argue the evidence before the trial court was not sufficiently "clear and convincing" to permit termination. (Br. of Appellant at 7.) He notes "peculiarities," (*id.* at 8), in the CHINS proceedings and that the CHINS proceedings lasted over three years, but offers no argument that those things affected the weight of the evidence.

In his brief, Father says a DFC Family Support Specialist testified "[F]ather posed no appreciable risk to his daughter's well-being." (Br. of Appellant at 9.) There is no such testimony on the page of the transcript to which Father directs us. Father also says he had progressed so far before DCS filed its second petition to terminate his parental rights that "he was allowed unsupervised visits with his daughter." (*Id.*) The testimony on the page to which Father directs us was the Family Support Specialist's answer "yes" to the question whether Father's supervised parenting time was increased during the duration of the case "until it got to *partially* unsupervised parenting time." (Tr. at 371) (emphasis added).

We acknowledge the evidence to which Father directs us in support of his argument, but there was evidence to support the trial court's findings to the contrary, and we may not reweigh it. *See, e.g., In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004) (we will not, on appeal, reweigh evidence or judge credibility of witnesses), *trans. denied*.

but assuming *arguendo* it is, there was evidence to support the trial court's Order.

[8] We review termination of parental rights with great deference. *In re K.S., D.S., B.G., and J.K.*, 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). We will not reweigh evidence or judge credibility of witnesses. *In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences most favorable to the judgment. *Id*. In deference to the juvenile court's unique position to assess the evidence, we will set aside a judgment terminating a parent's rights only if it is clearly erroneous. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *reh'g denied*, *trans. denied*, *cert. denied sub nom In re Swope*, 534 U.S. 1161 (2002). *And see In re Paternity of J.A.C.*, 734 N.E.2d 1057, 1059-60 (Ind. Ct. App. 2000) (noting "the particularly broad discretion entrusted to trial courts in family matters").

[9] When a judgment contains specific findings of fact and conclusions thereon, we apply a two-tiered standard of review. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). We determine first whether the evidence supports the findings and second whether the findings support the judgment. *Id*. "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the juvenile court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208.

[10] "The traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *In re M.B.*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. But a trial court must subordinate the interests of the parents to those of the child when evaluating the circumstances surrounding a termination. *In re K.S.*, 750 N.E.2d at 837. The right to raise one's own child should not be terminated solely because there is a better home available for the child, *id.*, but parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. *Id*. at 836.

[11] To terminate a parent-child relationship, the State must allege and prove:

> (A) that one (1) of the following is true:
>
>> (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.
>>
>> (ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.
>>
>> (iii) The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;
>
> (B) that one (1) of the following is true:

> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>
> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>
> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2) (2012). The State must provide clear and convincing proof of these allegations. *In re G.Y.*, 904 N.E.2d 1257, 1260-61 (Ind. 2009), *reh'g denied*. If the court finds the allegations in the petition are true, it must terminate the parent-child relationship. Ind. Code § 31-35-2-8 (2012).

[12] In its findings, the court recounted the events that preceded the first petition to terminate Father's parental rights, then noted that in February 2015, Father tested positive for alcohol and was arrested for that Community Corrections violation. Father's earliest release date is June of 2016. It noted neither parent had been able to demonstrate the ability to "consistently and appropriately parent and provide for the Child on a full-time basis" and that had been the case "throughout the length of the CHINS case." (App. at 12.) The court expressed its concern that no new information had come forward after the first termination hearing to explain the child's injuries while in the Parents' care,

and "the Court had hoped that the parents could get their lives organized to benefit their daughter and prevent further state action. Again, this did not occur." (*Id.* at 16.) There was ample evidence to support the termination of Father's parental rights.

# Conclusion

As the trial court's findings and conclusions supported its order terminating Father's parental rights, we affirm.

Affirmed.

Baker, J., and Brown, J., concur.