FILED

Nov 12 2019, 8:33 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
|---|---|
| Robert Owen Vegeler | Ronald E. Weldy |
| Fort Wayne, Indiana | Indianapolis, Indiana |

## IN THE
# COURT OF APPEALS OF INDIANA

DeGood Dimensional Concepts, Inc.,

*Appellant-Defendant, Cross-Appellee,*

v.

John D. Wilder,

*Appellee-Plaintiff, Cross-Appellant.*

November 12, 2019

Court of Appeals Case No. 19A-PL-141

Appeal from the Kosciusko Circuit Court

The Honorable Michael W. Reed, Judge

Trial Court Cause No. 43C01-1103-PL-27

**Altice, Judge.**

### Case Summary

[1] DeGood Dimensional Concepts, Inc. (DeGood), appeals the trial court's judgment in favor of its former employee, John D. Wilder, for unpaid sales commissions and attorney's fees. Wilder cross-appeals, claiming that the trial court erred in not awarding him amounts for unpaid wages, additional commissions, liquidated damages, attorney's fees, and pre-judgment interest and costs.

[2] We affirm in part, reverse in part, and remand with instructions.

## Facts & Procedural History

[3] DeGood is a corporation in North Webster that manufactures and sells small orthopedic medical devices. The corporation is operated by Scott DeGood and his wife, Mary. Wilder had worked in sales and marketing with various businesses over the years, including other medical device companies.

[4] At some point, Wilder approached the DeGoods about working for them in the sales division. After some negotiation, Wilder drafted an employment agreement (First Agreement) in December 2008. This contract provided that Wilder would earn an annual base salary of $50,000 to be paid on a bi-weekly basis with ten days of paid vacation the first year, fifteen days the second year, and twenty days every year thereafter.

[5] Wilder would also be paid a two percent commission on sales of pre-existing product sales from $1 million to $2 million, along with a two percent commission on sales of new products up to $2 million. This payment schedule was attached to the First Agreement. Wilder was to work exclusively for DeGood from his residence at least forty hours per week, plus travel as required. The First Agreement further provided that Wilder would report to the plant in North Webster for a minimum of six hours every two to three weeks. Wilder was obligated to copy DeGood on emails, abide by the rules set forth in the employee handbook that Wilder received and acknowledged, report all sales activities and

provide those records to DeGood, and maintain a call log. In the event of termination or resignation, a one-month notice was required and full compensation was to be paid during that period. Both parties signed the First Agreement, and Wilder was to commence employment on December 15, 2008. However, the parties subsequently agreed to a January 1, 2009 start date. The date was again mutually changed to January 15.

[6] DeGood sustained a substantial decline in product sales during the last half of 2009. As a result, all of its employees' hours were reduced for a six-month period. Additionally, both parties agreed that Wilder's salary would be reduced by 25% from July 20, 2009, through March 12, 2010.

[7] On August 1, 2010, the parties entered into a second employment agreement (Second Agreement) that provided for a $5000 increase in Wilder's salary. This contract was designed, among other things, to clarify some of the terms and rules that Wilder had not been following under the First Agreement. The Second Agreement also provided that termination/resignation notice was to be three months, and "all forms of compensation [were to be included] during this period." *Appellant's Appendix Vol. II* at 111-12.

[8] The DeGoods conducted periodic performance reviews throughout Wilder's employment, including one on September 8, 2010, that culminated in an overall negative review of Wilder's work performance. All reviews had detailed Wilder's numerous violations of known and stated rules that were set forth in the employee handbook, including the prohibition against working for other companies, taking

extended breaks, and working many less hours than what had been agreed upon. More specifically, Wilder had been incommunicative with the DeGoods for several months after commencing employment, and he did not meet with any customers from January 15, 2009, until April 2009. Wilder only made two trips to the plant during the first six months of 2009, failed to send sales reports, or copy DeGood on emails. Mary told Wilder at the September 8 meeting that he would be terminated in three months if his performance did not improve. The DeGoods and Wilder acknowledged and signed each review.

[9] On September 13, 2010, Wilder emailed Mary, stating, "I will assume that on 9/8/2010, I received my 90 day notice for termination. If this is the case, how would you like to proceed?" *Exhibits Vol. IV* at 1. Mary's email response that same day provided:

> It was just as we presented it to you, as a <u>Formal Warning (not termination)</u> from your employer that your job is in jeopardy, why it is in jeopardy, and what our expectations as your employer are in moving forward to resolve any and all the problems discussed. <u>We DID </u>NOT give you a termination notice, and also stated that was NOT our intentions [sic] during the meeting as well. We did state that we wanted to work this out with you and hopefully have you working with the company for years to come.

*Id.* (Emphases in original). The response went on to state that

> [b]ecause you have ignored numerous previous verbal warnings and e-mails, a written warning was presented to you that you now are on probation for 3 months, and will show us in those 3 months that you are willing to perform your job following the

guidelines in the report that was given to you, and also discussed thoroughly during the meeting.

*Id.* at 6. The following day, Wilder emailed Mary again, stating, "No Termination notice regarding our agreement dated 2010. Your intention is not to terminate our agreement. Purpose for your summary & our discussions ("Employee Performance Review") was to clarify areas of improvement & to make sure employer expectations were clear." *Id.* at 6.

[10] On December 6, 2010, Wilder emailed Mary explaining that he would be out for a half day because his back was "giving [him] trouble." *Id*. at 135. Later that afternoon, Mary responded as follows: "The amount of work that you have missed in the last couple of weeks on top of all the previous problems that have been addressed regarding your absenteeism is completely out of control and I must present a *final warning* that it [sic] not going to be continued to be [sic] tolerated!" *Id.* (Emphasis added*).*

[11] Another Performance Notification (Notification), bearing a handwritten notation that Wilder's employment with DeGood was being terminated, was issued to Wilder on January 5, 2011. The Notification detailed numerous policy violations that Wilder had committed throughout the course of his employment. Three prior formal written warnings were documented in the Notification, which stated that "[t]he employee has 'Willfully Neglected' the position of the Sales VP and terms stated in his employment contract, along with the disregard of previously stated warnings and the below performance notifications that the employee already has received to date." *Appellant's Appendix Vol. II* at 133. The Notification stated that

Wilder had continued to bring in company reps not associated with DeGood after he was told to cease such behavior. DeGood also asserted that Wilder had misused the company telephone and used the business's ATM card for unauthorized personal situations.

[12] DeGood observed in the Notification that "John Wilder was formally put on a 3 month PROBATION and was given notification in writing regarding the probation with all issues outlined on 9/8/10 which the employee acknowledged and signed and was given copies." *Id.* DeGood also made it clear in the Notification that

> [Wilder] was notified with a detailed summary, that he was in bre[ach] of his employment contract and that the employee owed the company monies from being overpaid for hours that the employee had not worked and that the amount owed to company would be zeroed out and *any new compensation for commissions would start over at the end of the 3 month probation with the understanding the employee needed to make a serious dedicated effort in resolving all the problems that were noted.*
>
> The needed effort needed by the employee was not achieved during this 3 month Probation. . . .

    *Id.* (Emphasis added).

[13] Wilder filed a complaint against DeGood on March 14, 2011, for unpaid salary, commissions, vacation and sick time, and bonuses. DeGood counterclaimed for damages and injunctive relief. DeGood claimed, *inter alia*, that it had acted in good faith in not paying Wilder a portion of the commissions, and that it could not be held liable for unpaid wages, attorney's fees, court costs, or liquidated damages.

DeGood also alleged that Wilder had committed civil theft because he had taken excessive unauthorized time off and had not worked the minimum forty-hour week required under the First and Second Agreements.

[14] Following a bench trial on August 22, 2018, the trial court entered its judgment, finding that Wilder failed to prove that DeGood had committed material breaches of either Agreement, inasmuch as both parties had agreed to modify the Agreements in light of their conduct during the course of Wilder's employment. It determined that Wilder failed to show that he had not been paid his full salary during the employment period. The trial court also found that Wilder had made a valid claim for unpaid commissions under the First Agreement in accordance with the Wage Claim Statute[1] for $9287.48. However, the trial court denied Wilder's request for liquidated damages under the Wage Claim Statute in light of the parties' modifications of both Agreements, their bona fide disputes throughout the course of the employment period, and the lack of evidence that DeGood had acted in bad faith in withholding the commissions. The trial court also ordered DeGood to pay the costs of the action and Wilder's attorney's fees in the amount of $15,250 pursuant to the Wage Claim Statute. With regard to DeGood's counterclaims, the trial court determined that DeGood failed to prove that it had overpaid Wilder's salary and that it was not entitled to damages against Wilder on its claim that Wilder had stolen any wages. In the end, the trial court entered judgment for

---

[1] Ind. Code § 22-2-5-1.

Wilder in the amount of $24,537.48, together with statutory interest. [2]  However, the final judgment stated that court costs were assessed *against* Wilder.

[15] DeGood appeals, claiming that the judgment must be set aside because it:  1) never agreed to modify the Agreements and that Wilder was the first to breach both Agreements; 2) cannot be liable for damages under the Wage Claim Statute because Wilder did not follow the proper procedures in pursuing his claims against it; 3) has established that commissions are not wages within the meaning of I.C. § 22-2-5-2; 4) is not liable for liquidated damages because it did not act in bad faith in withholding those commissions or alleged unpaid salary amounts; 5) established the evidence was insufficient to support the commission award; and 6) was entitled to attorney's fees and damages against Wilder for civil theft because Wilder's conduct throughout the course of his employment constituted "theft of labor." *Appellant's Brief* at 33.

[16] Wilder cross-appeals, claiming that he is entitled to: 1) amounts for underpaid and unpaid wages; 2) liquidated damages under the Wage Claim Statute; and 3) pre-judgment interest and costs.

### Discussion and Decision

---

[2] The trial court amended its final order and judgment on December 19, 2018 (Amended Final Order), stating that a letter from the Office of the Attorney General had authorized Wilder's counsel to pursue wage claims against DeGood under I.C. § 22-2-9-2.  The amended order also noted that the Wage Claim Statute provides for the payment of reasonable attorney's fees and costs and recovery of twice the amount of the unpaid wages as liquidated damages if the employer failed to act in good faith in the nonpayment of wages.

# I. Standard of Review

[17] On appeal, the findings and conclusions made by the trial court are to be liberally construed to support the judgment. *In re Paternity of J.A.C.,* 734 N.E. 2d 1057, 1059 (Ind. Ct. App. 2000). They will not be overturned unless they are clearly erroneous. *Lucero v. Lutheran Univ. Ass'n*, 621 N.E.2d 660, 664 (Ind. Ct. App. 1993). Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference. *Jones v. Von Hollow Ass'n, Inc.,* 103 N.E.3d 667, 671 (Ind. Ct. App. 2018). A judgment is clearly erroneous if it applies the wrong legal standard to properly found facts. *Id.* In determining whether the findings or judgment are clearly erroneous, we do not reweigh the evidence and consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom. *Yoon v. Yoon*, 711 N.E.2d 1265, 1268 (Ind. 1999). We evaluate questions of law de novo and owe no deference to a trial court's determination of such questions. *Jones,* 103 N.E.3d at 671.

[18] As for Wilder's cross-appeal, we note that he is appealing from a negative judgment. A judgment entered against a party who bore the burden of proof at trial is a negative judgment. *Stoffel v. JPMorgan Chase Bank*, 3 N.E.3d 548, 552 (Ind. Ct. App. 2014). On appeal, we will not reverse a negative judgment unless it is contrary to law. *Id.* To determine whether a judgment is contrary to law, we consider the evidence in the light most favorable to the cross-appellee, together with all the reasonable inferences to be drawn therefrom. *Id.* at 553. A party appealing from a negative judgment must show that the evidence points unerringly

to a conclusion different than that reached by the trial court. *Smith v. Dermatology Assoc.,* 977 N.E.2d 1, 4 (Ind. Ct. App. 2012).

## II. DeGood's Claims

### A. Modification and Enforcement of the Agreements

[19] DeGood argues that the trial court erred in finding that it had modified either Agreement. DeGood maintains that there was a lack of evidence of any modification and that it never acquiesced in, or waived, any of the Agreements' material terms. DeGood asserts that, "at best, it tolerated Wilder's non-compliance" with the Agreements. *Reply Brief of Appellant/Cross-Appellee* at 15. Therefore, DeGood contends that because there was no modification, and Wilder was the first to breach the Agreements by failing to follow their express terms, Wilder was precluded from enforcing the Agreements.

[20] DeGood correctly posits that the first party to breach a contract may not enforce its terms. *Steve Silveus Ins., Inc. v. Goshert*, 873 N.E.2d 165, 182 (Ind. Ct. App. 2007). However, the evidence at trial showed that both parties consented to a modification of the employment contracts, inasmuch as they agreed to Wilder's start date that differed from that stated in the First Agreement. Indeed, while the First Agreement provided that Wilder was to commence employment on December 15, 2008, both DeGood and Wilder subsequently agreed to a different start date of January 1, 2009. Wilder then sought to arrive at the plant on January 2, but that date did not materialize. Thereafter, Wilder suffered a back injury in an automobile accident on January 15 and sought ongoing medical treatment that

resulted in an agreed-upon modified work schedule. The evidence further established that the parties agreed to a reduction in Wilder's salary from the latter part of July 2009 through March 12, 2010. In light of this evidence, we cannot say that the trial court's finding of an agreed modification was clearly erroneous. Thus, neither party was precluded from enforcing the terms of the Agreements against the other, and DeGood's contention that Wilder was foreclosed from initiating a cause of action against it fails.

### B. Commissions Owed

### 1. Wilder's Alleged Failure to Follow Proper Procedure Under the Wage Claim Statute

[21] It appears that DeGood is claiming that the judgment must be reversed because Wilder failed to follow the procedures outlined in the Wage Claim Statute. As a result, DeGood maintains that Wilder was barred from recovering costs, attorney's fees, or liquidated damages for which the Wage Claim Statute provides in certain circumstances.

[22] In resolving this issue, we initially observe that the Wage Claim Statute provides:

> (a) Every . . . corporation . . . doing business in Indiana, shall pay each employee at least semimonthly or biweekly, if requested, the amount due the employee. The payment shall be made in lawful money of the United States. . . . Any contract in violation of this subsection is void.
>
> (b) Payment shall be made for all wages earned to a date not more than ten (10) business days prior to the date of payment. . .

I.C. § 22-2-5-1. A companion statute, I.C. § 22-2-5-2, defines the damages that are recoverable when proceeding under the Wage Claim Statute:

> Every such person, firm, corporation, limited liability company, or association who shall fail to make payment of wages to any such employee as provided in section 1 of this chapter shall be liable to the employee for the amount of unpaid wages, and the amount may be recovered in any court having jurisdiction of a suit to recover the amount due to the employee. The court shall order as costs in the case a reasonable fee for the plaintiff's attorney and court costs. *In addition, if the court in any such suit determines that the . . . corporation that failed to pay the employee as provided in section 1 of this chapter was not acting in good faith, the court shall order, as liquidated damages for the failure to pay wages, that the employee be paid an amount equal to two (2) times the amount of wages due the employee.*

(Emphasis added). Furthermore, I.C. § 22-2-9-4(b) sets forth the procedures that a claimant must follow to recover the damages under the Wage Claim Statute:

> The commissioner of labor may refer claims for wages under this chapter to the attorney general, and the attorney general may initiate civil actions on behalf of the claimant *or may refer the claim to any attorney admitted to the practice of law in Indiana.* The provisions of IC 22-2-5-2 apply to civil actions initiated under this subsection by the attorney general or his designee.

(Emphasis supplied).

[23] Contrary to DeGood's assertions, the trial court specifically determined in its Amended Final Order and Judgment (Amended Order) that Wilder *had* complied

with the procedures set forth in I.C. 22-2-9-4(b) in pursuing his claims. The trial court also pointed out that this declaration in the Amended Order had no effect upon the substance of the original judgment. Thus, DeGood's claim that Wilder failed to follow the proper procedures under the Wage Claim Statute fails.

### 2. *"Commissions" vs. "Wages"*

[24] DeGood argues for the first time on appeal that Wilder is barred from recovering any unpaid commissions because "commissions" are not "wages" within the meaning of the Wage Claim Statute. Time and again, this court has held that a party may not raise an issue on appeal if it was not raised at the trial court level. *KOA Properties, LLC v. Matheison,* 984 N.E.2d 1255, 1258 (Ind. Ct. App. 2013). The record reflects that DeGood not only failed to argue at the trial court level that commissions do not qualify as wages under the Wage Claim Statute, but it also conceded as much. Specifically, DeGood commented in its trial brief that "'commissions' are 'wages' under I.C. § 22-2-5, but only if pursued through I.C. § 22-2-9." *Appellant's App.* at 36, 38. Thus, DeGood is foreclosed from raising this issue for our review.

### 3. *Sufficiency of the Evidence—Unpaid Commissions*

[25] As for DeGood's alternative contention that the evidence did not support the commission award, we choose to follow the same standard that is employed when reviewing a damage award. That is, when reviewing a claim that an award of damages is inadequate, we will neither reweigh evidence, nor judge the credibility of the witnesses. *Palmer v. Comprehensive Neurologic Servs., P.C.,* 864 N.E.2d 1093,

1103 (Ind. Ct. App. 2007), *trans. denied.* We consider only the evidence favorable to the award. *Id.* Additionally, we must not reverse a damage award so long as the damages fall within the scope of the evidence. *Manzo v. Estep,* 689 N.E.2d 474, 475 (Ind. Ct. App. 1997). The finder of fact is in the best position to assess damages. *Palmer*, 864 N.E.2d at 1103.

[26] Here, it was established at trial that DeGood had both pre-existing product sales and new product sales during 2009 and 2010. The total combined sales during these two years amounted to $2,126,724.67. As discussed above, DeGood agreed to pay Wilder two percent on pre-existing product sales from $1 million to $2 million, and two percent on new product sales up to $2 million. However, a dispute existed as to what Wilder had actually earned in sales commissions, as well as what DeGood had actually paid him. Both parties agree that it is not readily apparent as to how the trial court calculated the amount due and arrived at the figure of $9287.48 in commissions that it ordered DeGood to pay. That said, Wilder acknowledges—and we agree—that the unpaid commission award was within the scope of the evidence presented at trial. Thus, we decline to disturb that judgment. *See id.* (holding that the jury's award of damages was proper when the amount of the judgment fell within the parameters of the evidence presented at trial).

### 4. Alleged Bad Faith

[27] DeGood also claims that Wilder cannot recover liquidated damages under the Wage Claim Statute for the unpaid commissions because it was not established

that DeGood acted in bad faith by failing to pay these amounts. As discussed above, I.C. § 22-2-5-2 provides for an award of twice the amount of wages due, as liquidated damages, if it is determined that the employer had not acted in good faith in failing to pay the amount due the employee.

[28] Here, there is no showing that DeGood's withholding of the amounts that were due amounted to bad faith in light of the parties' conduct that existed throughout Wilder's employment period, including the modifications to the Agreements, and the good faith disputes that existed as to what was actually owed. Moreover, there is no showing that the trial court ordered DeGood to pay any amount over and above the commissions that were actually owed, i.e. no liquidated damages, with the exception of attorney's fees that are authorized under I.C. § 22-2-5-2. In short, DeGood cannot be heard to complain about an improper award of liquidated damages under the Wage Claim Statute when the trial court did not award such damages.

### C. Liability For Alleged Theft

[29] DeGood next claims that the trial court erred in not ordering Wilder to pay its attorney's fees and damages for civil theft under Ind. Code § 34-24-3-1, the Crime Victims Relief Act, on its counterclaim because the evidence established that Wilder did not work the required forty hours per week under either Agreement.

Thus, DeGood maintains that Wilder's conduct amounted to fraud and "theft of labor."

[30] It is undisputed that Wilder was a salaried employee. Thus, DeGood was required to pay Wilder his salary for each bi-weekly pay period that he worked for DeGood, regardless of the number of days and hours that Wilder actually worked in any particular week. I.C. § 22-2-5-1; 29 C.F.R. § 541.602 (providing that an employer must pay an employee his or her "full salary for any week in which the employee performs any work without regard to the number of days or hours worked. . . ."); s*ee also Design Indus. v. Cassano*, 776 N.E.2d 398, 401 (Ind. Ct. App. 2002) (observing that salary is defined as fixed compensation paid regularly for services). Thus, the trial court properly determined that Wilder had not committed theft of his wages, and DeGood is not entitled to damages under the Crime Victims Relief Act.

### III. Wilder's Cross-Appeal

### A. Notice of Termination

[31] On cross-appeal, Wilder argues that the trial court should have found that DeGood failed to afford him the three-month notice of termination pursuant to the requirements of the Second Agreement. Wilder asserts that he was terminated from employment on January 5, 2011, without proper notice and that DeGood is obligated to pay him an additional $32,300 in salary and commissions, plus liquidated damages.

[32] At trial, Mary testified as follows:

> Q: [I]s it your position that DeGood did give Mr. Wilder 3 months' notice of its intention to terminate the contract?
>
> A: We did. With the condition that he could keep his job. He was told *this is our 3-month notice, if you do this. If you do not do this, then you are done at the end of this time period*. He had a window of opportunity to keep his job and he did not do it. He did not meet the requirements of what was stipulated in his performance review at his, at his notice, his 3-month notice, he did not perform what he was told so that he could potentially keep his job. He was told if you do not meet these requirements then your job is terminated. At the, at the end of the three months.

*Appellant's Reply Appendix Vol III*, at 3.

[33] The evidence established that Wilder was given specific and mandatory performance requirements at the September 8, 2010 meeting. Unless Wilder satisfied those requirements over the next three months, his employment with DeGood would be terminated. Wilder failed to meet those requirements, as was detailed in the Notification, and he was terminated. Wilder acknowledged that he had been provided the required notice when he emailed DeGood stating, "If there is no room for discussion then I cannot accept any of the calculations or conclusions offered and presented to me and *I will assume that on 9/8/2010 I received my 90-day notice for termination.*" *Appellant's Reply Appendix* at 8 (emphasis added).

[34] Notwithstanding this evidence, Wilder directs us to Mary's email of September 13, 2010, where she stated that no termination notice had been provided to him at the

performance review meeting on September 8. Although Mary stated that she wanted to work with Wilder and that it was not DeGood's intention that Wilder would be terminated at the end of three months, she made it clear that Wilder was required to demonstrate improved performance during that period, or his employment would be terminated. Moreover, Wilder signed and acknowledged the review that set forth the requirements and conditions that pertained to the probationary period. Mary's emails to Wilder and her testimony at trial, coupled with Wilder's assumption that he had, in fact, received a ninety-day notice for termination on September 8, belies his claim on appeal that DeGood did not provide him with the required notice under the Second Agreement.

[35] Finally, even if there was some merit to the assertion that Mary's testimony at trial might have contradicted what she had posited in the emails and performance reviews, such evidence goes to her credibility. This court has long held that the credibility of witnesses and the weight to be afforded their testimony is a question for the trier of fact. *City of Gary v. Gause*, 317 N.E.2d 887, 891 (1974). And the trial court, as the factfinder, could believe all, none, or any portion of Mary's testimony. In other words, even if Mary had provided testimony that could be construed as inconsistent with her prior statements or emails, it is apparent that the trial court chose to believe Mary's testimony that the required notice was provided, in spite of any alleged prior inconsistent statements that she might have made. Such alleged contradictory statements do not render her testimony inconsequential or worthless. *See id.* at 891 (recognizing that although witnesses had made inconsistent

statements to police officers prior to Fire Department Board proceedings, the inconsistent statements went only to the weight of their testimony).

[36] In short, we will not substitute our judgment for that of the trial court that found Mary's trial testimony credible. Therefore, when applying our negative judgment standard of appellate review, which we do here because Wilder bore the burden of proof on this issue at trial and did not prevail, it was not clearly erroneous for the trial court to infer from the evidence presented that Wilder was afforded the required ninety-day notice of termination. Thus, Wilder's claim that he is entitled to an additional $32,300 in unpaid wages and commissions fails.

### B. Unpaid/Underpaid Salary

[37] In a somewhat related issue, Wilder asserts on cross-appeal that the trial court erred in denying his claim for unpaid salary amounts that were allegedly owed to him. Wilder asserts that the evidence established that he was entitled to an additional award of $22,236.33 in unpaid wages because DeGood had only paid him a portion of his salary.

[38] Under the First Agreement, Wilder was to be paid an annual salary of $50,000, with bi-weekly payments. The effective period commenced on January 1, 2009 and ended on July 31, 2010. Additionally, the parties agreed that Wilder's salary was to be cut by twenty-five percent from July 20, 2009 to March 12, 2010.

[39] The gross amount paid to Wilder through July 31, 2010, was $69,165. *See Appellant's Reply Appendix* at 9-60. What Wilder earned under the First Agreement

for forty-one pay periods was $77,884. *Id.* However, as discussed above, the parties agreed that Wilder's salary would be reduced by twenty-five percent for twenty-five pay periods. After subtracting this percentage—or $9615—Wilder should have been paid $68,269. *See id.* Wilder, therefore, was paid an overage of $896, which was likely because DeGood reimbursed him for out-of-pocket expenses on occasion.

[40] Under the Second Agreement, Wilder's annual base salary was increased to $55,000. *See Appellant's Reply Appendix* at 9-60. His bi-weekly payment was $2115, that commenced on August 1, 2010, and extended through January 6, 2011. The gross amount that Wilder received from DeGood during this period was $17,821. DeGood acknowledges that it paid Wilder $3329 less than what it owed, based on the September 8, 2010 employment performance review, when DeGood informed Wilder that it was strictly enforcing the forty-hour per week requirement. Thus, DeGood calculated the time that Wilder had not worked and reduced Wilder's salary accordingly.

[41] Notwithstanding DeGood's decision, Wilder remained a salaried employee and was entitled to his agreed-upon compensation set forth in the Second Agreement. *See* I.C. § 22-2-5-1 and -2. However, we do not agree with Wilder's contention that the trial court was obligated to find that DeGood acted in bad faith when it withheld a portion of the amounts that were due under the Second Agreement, particularly when considering Wilder's course of conduct throughout his employment, the mutually agreed-upon modifications of the agreements, and the bona fide disputes that occurred between the parties. Similarly, we reject Wilder's

assertion that "DeGood only paid Mr. Wilder when and what [it] felt like paying him." *Reply Brief of Cross-Appellant* at 14. Hence, we remand this case to the trial court with instructions that it enter an additional award of $3329 to Wilder for unpaid wages, and to calculate a reasonable amount of attorney's fees related to this particular claim in accordance with the Wage Claim Statute. We, however, decline to order DeGood to pay liquidated damages, inasmuch as the evidence failed to establish that DeGood's withholding of these wages amounted to bad faith under the Wage Claim Statute.

### C. Remaining Damages—Pre-Judgment Interest and Costs

Wilder argues that the trial court erred in not awarding him pre-judgment interest on the commissions that DeGood had failed to pay. Wilder also asserts that he is entitled to pre-judgment interest on any additional damages that are awarded in this appeal.

It is well-settled that an award of prejudgment interest in a breach of contract action is warranted if the amount of the claim rests upon a simple calculation and the terms of the agreement make such a claim ascertainable. *Song v. Iatarola*, 76 N.E.3d 936, 939 (Ind. Ct. App. 2017). Prejudgment interest is awarded to fully compensate an injured party for the lost use of money. *Fackler v. Powell,* 923 N.E.2d 973, 977 (Ind. Ct. App. 2010). Put another way, "prejudgment interest is recoverable not as interest but as additional damages to accomplish full compensation." *Crawford Cty. Cmty. Sch. Corp. v. Enlow,* 734 N.E.2d 685, 692 (Ind. Ct. App. 2000), *trans. denied.* The test for determining whether an award of

prejudgment interest is appropriate is whether the damages are complete and may be ascertained as of a particular time. *Song,* 76 N.E.3d at 939 (Ind. Ct. App. 2017). The amount is computed from the time the principal amount was demanded or due and is allowable at the permissible statutory rate when no contractual provision specifies the interest rate. *Id.* Importantly, for purposes of our review, an award of prejudgment interest is generally not considered a matter of discretion. *Id.* The current interest rate is eight percent when there is no contract by the parties specifying a different interest rate. Ind. Code § 24-4.6-1-101.

[44] Here, Wilder's claims for unpaid commissions and salary were ascertainable pursuant to the Agreements and were due and owing on a certain day in the past. Thus, Wilder is entitled to pre-judgment interest on these amounts which, on remand, is to be calculated at the statutory rate.

[45] Finally, we note that the trial court assessed costs against Wilder. Ind. Code § 34-52-1-1 provides: "In all civil actions, the party recovering judgment shall recover costs, except in those cases in which a different provision is made by law." Because Wilder has substantially prevailed in this appeal, he is entitled to recover costs of the action. Moreover, the damages provision under the Wage Claim Statute provides for the assessment of those costs. I.C. § 22-2-5-2. Thus, we instruct the trial court to calculate the costs of this matter on remand and to enter an order against DeGood for that amount.

### *Conclusion*

[46] In light of our disposition of the issues discussed above, we affirm in part, reverse in part, and remand this cause to the trial court with instructions that it amend the order to include an additional award for Wilder in the amount of $3329 in unpaid wages. We further instruct the trial court to calculate the costs of this matter, the amount of prejudgment interest that is owed, determine the additional award of reasonable attorney's fees to which Wilder is entitled, and enter an order accordingly. In all other respects, the trial court's judgment is affirmed.

Brown, J. and Tavitas, J., concur.