

I N   T H E

# Court of Appeals of Indiana

In the Matter of J.B. (Minor Child)

K.C. and S.C.,

*Appellants-Respondents*

v.

Indiana Department of Child Services,

*Appellee-Plaintiff*



FILED

Oct 22 2024, 9:27 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

---

October 22, 2024

Court of Appeals Case No.
24A-JC-1124

Appeal from the Wayne Superior Court

The Honorable Kaarin M. Lueck, Magistrate

Trial Court Cause No.
89D03-2304-JC-26

---

**Opinion by Judge Weissmann**
Judges Pyle and Felix concur.

**Weissmann, Judge.**

[1] K.C. and S.C. (collectively, Foster Parents) cared for 1-year-old J.B. (Child) as foster parents for five weeks after Child was declared to be a child in need of services (CHINS). The Indiana Department of Child Services (DCS) then supported another family's adoption of Child. But when DCS attempted to place Child with that family (Adoptive Family), Foster Parents sought to intervene in the CHINS action and petitioned for a preliminary injunction barring the move.

[2] The trial court denied both the motion to intervene and the injunction, and Foster Parents appealed. Finding the trial court correctly determined that Foster Parents had no right to participate in the CHINS proceeding as a party and were not entitled to a preliminary injunction, we affirm.

## Facts

[3] Three days after Child was born in April 2023, DCS petitioned to find Child to be a CHINS based on his mother's mental illness and domestic violence in her home. Child was placed in foster care and later adjudicated a CHINS. Granting wardship of Child to DCS, the CHINS court ordered DCS to be responsible for the supervision, placement, and care of Child.

[4] Child lived six months in his first foster home, after which DCS placed him in a second foster home for about six weeks. Child then lived for about four months in Ohio with a relative, who ultimately requested Child's removal based on the relative's inability to continue to care for Child's alleged extensive medical and

developmental needs. The relative reported that Child, then less than 12 months old, had been diagnosed with dysphasia and hypertonia and was extremely stiff and unable to move. Child was often unconsolable and fearful, and he had difficulty swallowing without choking, according to the relative.

[5] Child was returned to Indiana and placed with Foster Parents, who were licensed foster parents. The husband was a former paramedic, and the wife worked as a physician's assistant. Shortly before Child began living with them in early March 2024, Foster Parents had adopted two other children.

[6] When Child was placed with Foster Parents, the permanency plan for Child was concurrent reunification and adoption, meaning reunification with Mother was still a possibility. Some misunderstanding arose, however, and Foster Parents believed they would be allowed to adopt Child if he were placed with them. In late March 2024, Child's mother signed a general consent to allow Child to be adopted. DCS contacted Foster Parents to determine whether they wished to be interviewed to adopt Child. Foster Parents expressed surprise that other families were being considered for the adoption.

[7] A DCS adoption committee convened, as was the county's custom when a child found to be a CHINS needed an adoptive home. The committee interviewed several families, including Foster Parents, who were interested in adopting Child. The committee members also reviewed the applicants' home studies and family and child histories. The committee ultimately selected Adoptive Family, who had no children. Foster Parents were informed of the

decision and told that DCS soon would transport Child from Foster Parents' home to Adoptive Family's home.

[8] Unhappy with the adoption committee's decision, Foster Parents moved to intervene in the CHINS proceeding. They also petitioned to enjoin DCS's removal of Child from their home—a motion that equated to a request for a preliminary injunction. After a hearing, the trial court requested DCS reconsider whether they still wished to support Child's adoption by Adoptive Family, rather than Foster Parents. DCS did not change its mind. Recognizing DCS's authority over the placement of its wards, the court denied Foster Parents' motion to intervene, as well as their request for preliminary injunction. The court found:

> Having reviewed the reports submitted for consideration at this hearing, as well as the testimony and other evidence presented, the Court makes the following findings of fact and conclusions:
>
> 1. On February 22, 2024, the DCS started the adoption recruitment process in this case.
>
> 2. On March 3, 2024, the DCS placed the child with [Foster Parents], after the child's relative placement through the Interstate Compact on the Placement of Children (ICPC) requested the child be removed.
>
> 3. Since being placed with [Foster Parents], the child's medical condition has improved.
>
> 4. On March 21, 2024, Mother signed Consent to Adoption of the child.
>
> 5. [Foster Parents] were not told by Julie Rowe, with the Meridian foster care services, that Ms. Rowe submitted two (2) families for consideration to adopt the child.

6. Three (3) families were interviewed as possible pro-adoptive placements for the child, including [Foster Parents].

7. A family other than [Foster Parents] was chosen by the DCS to be the pro-adoptive placement for the child.

8. The DCS did not advise the CASA of many aspects of this case, including that the child was removed from the ICPC placement.

9. The DCS did not file notice with this Court that the child was moved to the new placement with [Foster Parents].

10. The DCS has wardship of the child, including responsibility for the child's placement.

11. While the DCS has not handled many aspects of this child's placement pursuant to the DCS' own policies and the standards expected by this Court, the Court does not find that it is appropriate to interfere with the wardship.

IT IS, THEREFORE, ORDERED that the Motion and the Enjoin Removal Petition are denied.

App. Vol. II, pp. 19-20. Foster Parents appeal.

## Discussion and Decision

[9] Foster Parents claim the trial court erred in denying both their motion to intervene and their motion to enjoin Child's removal. As Foster Parents have not met their burden of showing the trial court abused its discretion, we affirm.

## I. Motion to Intervene

[10] "Intervention is the procedure through which nonparties may assert their rights in an ongoing lawsuit." *In re Guardianship of Adducci*, 240 N.E.3d 708, 714 (Ind.

Ct. App. 2023). Indiana Trial Rule 24 governs intervention and provides in relevant part[1]:

> **(B) Permissive Intervention.** Upon timely filing of his motion anyone may be permitted to intervene in an action:
>
> (1) when a statute confers a conditional right to intervene; or
>
> (2) when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement, or agreement issued or made pursuant to the statute or executive administrative order, the governmental unit upon timely application may be permitted to intervene in the action. In exercising its discretion[,] the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

[11]     In CHINS proceedings, Trial Rule 24 works in conjunction with Indiana Code § 31-32-2.5-1. That statute generally permits "a foster parent" or "a person who has been a foster parent" of a child to "petition the court to request intervention as a party during any stage of a [CHINS] proceeding under IC 31-34." Ind. Code § 31-32-2.5-1(a) (2023). A court must grant a petition to intervene filed under Indiana Code § 31-32-2.5-1 "if the court determines that intervention by the petitioner is in the best interests of the child." Ind. Code § 31-32-2.5-3.

---

[1] On appeal, Foster Parents do not specify whether they are entitled to intervention as a matter of right under Trial Rule 24(A) or to permissive intervention under Trial Rule 24(B). We interpret their argument as falling under the latter. If Foster Parents intended to rely on Rule 24(A), they have waived such a claim. *See* Indiana Appellate Rule 46(A)(8)(a) (requiring appellant's arguments be cogent and supported by citations to authority and to the record on appeal).

[12] We review a trial court's ruling on a motion to intervene for an abuse of discretion. *In re Guardianship of Adducci*, 240 N.E.3d at 713. Taking the facts alleged in the motion as true, we reverse an order denying a motion to intervene if the decision is clearly against the logic and effect of the facts and circumstances before the court or if the court has misinterpreted the law. *Id.*

[13] Foster Parents claim their intervention was in Child's best interests because they cared for Child for five weeks, "loved him unconditionally," "met and improved his medical needs," and mutually bonded with him. Appellant's Br., p. 12. Foster Parents also note that the court criticized DCS's handling of Child's placement with Adoptive Parents, given that DCS had failed to follow its own policies and did not meet the court's expectations. Aside from citing one appellate decision establishing the standard of review, though, Foster Parents provide no authority supporting their position.

[14] For instance, Foster Parents do not specify any statutory violations by DCS that would support granting their motion to intervene. They merely contend that the trial court's comments show that DCS was not acting in Child's best interests. Yet the court never made such a finding. In fact, by concluding that it "does not find that it is appropriate to interfere with wardship," the court suggests that DCS overall was acting in Child's best interests. App. Vol. II, p. 20.

[15] Foster Parents thus have failed to show that either their brief history with Child or any mistakes by DCS renders Foster Parents' intervention in Child's best interests. The adoption committee determined that adoption by Adoptive

Family was in Child's best interests, in part, because that family had no children. The record contains no evidence that Adoptive Family will not provide loving care and medical support for Child or that Child, who had just turned 1, would be harmed by departure from Foster Parents' home just five weeks after he arrived there. In fact, Child had stayed longer in other placements and been moved without apparent incident. The trial court did not abuse its discretion in denying Foster Parents' motion to intervene.

## II. Preliminary Injunction

Before we reach the merits of this issue, we note that neither party addresses whether Foster Parents have the requisite standing to seek the return of Child, given the proper denial of their motion to intervene. A litigant must be "entitled to have a court decide the substantive issues of a dispute." *Solarize Ind., Inc. v. S. Ind. Gas & Elec. Co.*, 182 N.E.3d 212, 216 (Ind. 2022). The standing requirement thus imposes a limit on the court's jurisdiction, as well as the party's ability to gain the relief the party seeks. *See id.* at 216-17.

"[U]nlike parent and step-parent relationships, foster relationships are designed to be temporary, providing a safe, nurturing environment until the child can either be returned to the natural parents or adopted by new ones." *Worrell v. Elkhart Cnty. Off. of Fam. & Child.*, 704 N.E.2d 1027, 1029 (Ind. 1998) (internal quotations omitted). "[I]f each of the potential profusion of foster parents had standing because he or she had custody of the child at some point, the natural

or adoptive parents might be forced to defend visitation claims against a legion of petitioners." *Id.*

[18] Although foster parents normally are not parties to a CHINS petition, they are provided certain limited statutory rights to notice and hearing. *See, e.g.*, Ind. Code § 31-34-21-4 (requiring notice of periodic case review to child's foster parent). But seeking to control Child's placement is quite another thing. Foster Parents do not point to any statutory authority or provide any precedent allowing them to seek a preliminary injunction—or file any other motion, for that matter—if they are not proper intervenors.

[19] But even if Foster Parents had standing to seek the preliminary injunction, the trial court properly denied such relief. To obtain a preliminary injunction, the movant must show by a preponderance of the evidence that: (1) the movant has a reasonable likelihood of success on the merits; (2) the remedies at law are inadequate and irreparable harm will occur while the case is pending; (3) the threatened injury to the movant from a denial of the injunction outweighs the potential harm to the nonmovant from granting the injunction; and (4) the public interest would not be disserved by granting the injunction. *Thind v. Delaware Cnty.*, 207 N.E.3d 434, 439 (Ind. Ct. App. 2023); *Vickery v. Ardagh Glass, Inc.*, 85 N.E.3d 852, 859-60 (Ind. Ct. App. 2017).

[20] Appellate review of a preliminary injunction decision is "limited and deferential." *State v. Econ. Freedom Fund*, 959 N.E.2d 794, 801 (Ind. 2011). A

trial court has discretion to enter a preliminary injunction and will be reversed only upon an abuse of that discretion. *Id.* at 799-800.

[21] The trial court did not make explicit findings as to each of these preliminary injunction requirements when denying Foster Parents' requested injunction.[2] But the court's verbal and written orders make clear that it viewed Foster Parents as lacking a reasonable likelihood of success on the merits.

[22] In their initial written request for preliminary injunction, Foster Parents sought to halt the removal of Child from their home. On appeal, however, Foster Parents appear to assert that the aim of the injunction was to secure Child's adoption. When arguing that they met the requirements of a preliminary injunction, Foster Parents contend that they "demonstrated a reasonable likelihood of success to adopt [Child] at trial." Appellant's Br., p. 9. Foster Parents focus on DCS documents showing that they were listed as a "pre-adoptive placement" just 11 days before DCS supported Adoptive Family's adoption of Child. *Id.* at 10. Foster Parents also note that they maintained a foster care license and, only three months earlier, had adopted two other children who were wards of the State.

[23] But this argument about adoption is misplaced, as the CHINS court lacked authority to grant an adoption. "The probate court has exclusive jurisdiction in all adoption matters." Ind. Code § 31-19-1-2. And DCS, which must consent to

---

[2] Foster Parents do not challenge the adequacy of the trial court's findings.

Child's adoption, has already determined that it will not support Foster Parents' goal of adopting Child. *See* Ind. Code § 31-19-9-1(a)(3) (generally requiring consent to adoption by "[e]ach person, agency, or local office having lawful custody of the child whose adoption is being sought"); Ind. Code § 31-19-7-3 ("Approval under this chapter for placement in a proposed adoptive home must be filed with the petition for adoption."). Even after being ordered by the trial court to consider anew its choice for Child's pre-adoptive home, DCS does not appear to have changed its view that selection of Adoptive Family was in Child's best interests. Foster Parents have not shown a reasonable likelihood of success on the merits of their quest to adopt Child.

[24] The outcome is no different if we focus just on whether Foster Parents had a reasonable likelihood of success of halting DCS's removal of Child from their home. The court noted that DCS has authority over placements of children who are declared CHINS—a statement with which Foster Parents agree on appeal. Appellant's Br., p. 9 ("As wardship holder of [Child,] DCS maintains nearly unabated discretion on his placement."); *see generally* Ind. Code §§ 31-19-7-1, -2 (requiring approval of DCS before child can be placed in pre-adoptive home). The court stated that it does not normally second guess DCS's decisions on such placements because DCS has much more information about Child. The court concluded that it had heard nothing at the hearing that justified deviation from its normal deference to DCS's placement decisions. By doing so, the court effectively communicated to Foster Parents that they had not established a reasonable likelihood that they would succeed on the merits.

As the trial court did not abuse its discretion in denying Foster Parents' motion to intervene and their request for preliminary injunction, we affirm.

Pyle, J., and Felix, J., concur.

ATTORNEY FOR APPELLANT

J. Clayton Miller
Jordan Law, LLC
Richmond, Indiana

ATTORNEY FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Katherine A. Cornelius
Deputy Attorney General
Indianapolis, Indiana